**ON REHEARING EN BANC**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

         *Plaintiff-Appellee,*

         v.

TORRELL CHUVALA VANN,

         *Defendant-Appellant.*

No. 09-4298

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(7:08-cr-00098-BO-1)

Argued: May 11, 2011

Decided: October 11, 2011

Before TRAXLER, Chief Judge, and WILKINSON,
NIEMEYER, MOTZ, KING, GREGORY, SHEDD, AGEE,
DAVIS, KEENAN, WYNN, and DIAZ, Circuit Judges.*

Vacated and remanded by published opinion. A per curiam
opinion, in which Chief Judge Traxler and Judges Motz,
King, Gregory, Agee, Davis, Keenan, Wynn, and Diaz joined,
was issued on behalf of the en banc majority. Judge King
wrote a concurring opinion, in which Judges Motz, Gregory,

*Judge Duncan did not participate in this appeal.

and Davis joined. Judge Agee wrote an opinion concurring in the judgment, concurring in the en banc majority opinion, and concurring in the opinion of Judge Keenan. Judge Davis wrote a concurring opinion. Judge Keenan wrote a concurring opinion, in which Chief Judge Traxler and Judges Agee, Wynn, and Diaz joined. Judge Wilkinson wrote an opinion concurring in the judgment. Judge Niemeyer wrote an opinion concurring in part and dissenting in part, in which Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Clay Campbell Wheeler, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

## OPINION

PER CURIAM, for the en banc majority:[1]

On January 20, 2008, following a domestic altercation, Torrell Vann was arrested in possession of a handgun. In

---

[1]This per curiam opinion is adopted and joined by nine members of the en banc Court: Chief Judge Traxler and Judges Motz, King, Gregory, Agee, Davis, Keenan, Wynn, and Diaz.

November of that year, the grand jury returned a single-count superseding indictment charging Vann with violating 18 U.S.C. §§ 922(g)(1) and 924. The indictment also alleged that Vann had at least three previous convictions for ACCA violent felonies, rendering him eligible for the sentencing enhancement provided for in § 924(e)(1). On December 15, 2008, Vann pleaded guilty to the offense charged, and his sentencing proceedings were scheduled for the following March.

A § 922(g) offense typically carries a statutory maximum sentence of ten years in prison. *See* § 924(a)(2). If the accused has three or more previous convictions for ACCA violent felonies, however, he is subject to an enhanced minimum sentence of fifteen years with a maximum of life imprisonment. *See* § 924(e)(1). Vann's presentence investigation report (the "PSR") reflected that he had three previous convictions for violating North Carolina General Statute section 14-202.1 (the "Indecent Liberties Statute" or "Statute") that, according to the probation officer, constituted ACCA violent felony convictions and subjected Vann to the sentencing enhancement.

The text of the Indecent Liberties Statute provides, in pertinent part, as follows:

> (a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
>> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire ["subsection (a)(1)"]; or
>>
>> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with

> the body or any part or member of the body
> of any child of either sex under the age of
> 16 years ["subsection (a)(2)"].

N.C. Gen. Stat. § 14-202.1(a). The Statute plainly prohibits a wide range of objectionable acts and was designed to "encompass more types of deviant behavior, giving children broader protection than available under other statutes proscribing sexual acts." *State v. Etheridge*, 352 S.E.2d 673, 682 (N.C. 1987).

Vann objected to the district court's application of the enhancement, asserting that recent Supreme Court and Fourth Circuit decisions undermined the PSR's contention that his previous convictions were for ACCA violent felonies. *See Begay v. United States*, 553 U.S. 137 (2008) (declining to designate New Mexico felony driving under influence ("DUI") offense as ACCA violent felony); *United States v. Thornton*, 554 F.3d 443 (4th Cir. 2009) (same; Virginia statutory rape offense). The government, relying primarily on *United States v. Pierce*, 278 F.3d 282 (4th Cir. 2002), responded that the PSR had correctly counted each of Vann's three previous indecent liberties offenses as ACCA violent felonies. In *Pierce*, decided six years prior to *Begay*, we ruled that a conviction under the Indecent Liberties Statute is a "crime of violence" as contemplated by the career offender enhancement of the Sentencing Guidelines. *See* 278 F.3d at 284. In so ruling, we reasoned that the conduct underlying such a conviction "creates a serious potential risk of physical injury." *Id.*[2]

---

[2]The ACCA's definition of a "violent felony" is nearly identical to and materially indistinguishable from the definition of a "crime of violence" under the career offender enhancement of the Sentencing Guidelines. *Compare* § 924(e)(2)(B), *with* USSG § 4B1.2(a). We routinely rely on decisions interpreting either of those enhancement provisions in ascertaining whether a prior conviction is a crime of violence under the Guidelines or a violent felony under the ACCA. *See United States v. Jenkins*, 631 F.3d 680, 683 (4th Cir. 2011); *United States v. Rivers*, 595 F.3d 558, 560 n.1 (4th Cir. 2010).

The district court rejected Vann's characterization of his three previous indecent liberties convictions, concluding that they were for ACCA violent felonies and that he was thus subject to § 924(e)(1)'s sentencing enhancement. As a result, on March 17, 2009, the court sentenced Vann to the statutory minimum of fifteen years in prison.[3] Vann filed a timely notice of appeal, and we have appellate jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. A divided panel of this Court affirmed Vann's sentence, employing the "modified categorical approach" first announced in *Taylor v. United States*, 495 U.S. 575, 602 (1990), for the purpose of analyzing prior offenses to determine whether they constitute ACCA violent felonies. *See United States v. Vann*, 620 F.3d 431 (4th Cir. 2010). Upon granting Vann's petition for rehearing en banc, we vacated the panel opinion.

## I.

## A.

If we assume that we may resort to the modified categorical approach employed by the panel majority, and also assume that doing so would lead to the ineluctable conclusion that a subsection (a)(2) offense is a violent felony for ACCA purposes, the government nonetheless cannot prove that Vann was convicted of violating subsection (a)(2). Judge Niemeyer's separate opinion, concurring in part and dissenting in part ("the dissent"), contends that because Vann's indecent liberties convictions arose from guilty pleas to conjunctively drawn indictments tracking the language of both (a)(1) and (a)(2), Vann necessarily pleaded guilty to violating both of those subsections. That position is untenable, however, as demonstrated by the legal principles generally applicable to charging documents.

---

[3]If the district court had not ruled that Vann's indecent liberties convictions were for violent felonies, the ACCA's sentencing enhancement would have been inapplicable. Vann would have then faced an advisory Guidelines range of 77 to 96 months, with a ten-year statutory maximum.

First, it is settled that a charging document must allege conjunctively the disjunctive components of an underlying statute. *See State v. Armstead*, 562 S.E.2d 450, 452 (N.C. Ct. App. 2002) ("Where a statute sets forth disjunctively several means or ways by which the offense may be committed, a warrant thereunder correctly charges them conjunctively." (internal quotation marks omitted)); *see also United States v. Rhynes*, 206 F.3d 349, 384 (4th Cir. 1999) ("Where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive.").**4** That Vann's predicate charging documents properly use the conjunctive term "and," rather than the disjunctive "or," does not mean that Vann "necessarily" pleaded guilty to subsection (a)(2). Similarly, in trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced — in the absence of a special verdict identifying the factual bases for conviction — to a term of imprisonment exceeding the statutory maximum for the "least-punished" of the disjunctive statutory conduct. *See Rhynes*, 206 F.3d at 379-81.

Presented with a single charging document alleging alternative types of conduct in the conjunctive, the dissent effectively distinguishes a conviction like the one in *Rhynes*, obtained as the result of a jury verdict, from one like Vann's, which was entered on a guilty plea. The dissent draws this critical distinction on the basis of its theory that, when a defendant pleads guilty, he necessarily admits all allegations charged conjunctively. *See post* at 85-88. The opposite conclusion, however, is the better-reasoned view. *See Omari v. Gonzales*, 419 F.3d 303, 308 n.10 (5th Cir. 2005)

---

**4**Indeed, a disjunctive charge in an indictment contravenes an accused's constitutional rights. *See, e.g.*, *The Confiscation Cases*, 87 U.S. 92, 104 (1874) (explaining that a disjunctive charge is "wholly insufficient" and lacks "necessary certainty," as it fails to provide "definite notice of the offence charged" and does not protect against "subsequent prosecution for one of the several offences").

("Indictments often allege conjunctively elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty."); *see also Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082 n.3 (9th Cir. 2007) ("[A] plea of guilty admits only the elements of the charge necessary for a conviction."); *Valansi v. Ashcroft*, 278 F.3d 203, 214-17 (3d Cir. 2002) (rejecting assertion that defendant's guilty plea to indictment charging embezzlement with "intent to injure and defraud" admitted both states of mind where intent to do either was sufficient to sustain conviction).[5]

---

[5]The court in *Valansi* acknowledged by footnote the "common practice" of government prosecutors to "plead in the conjunctive, but instruct in the disjunctive." 278 F.3d at 216 n.10 (quoting Dep't of Justice Criminal Resource Manual § 227). According to the Third Circuit, the purpose of indicting in the conjunctive is to "avoid uncertainty only; just as the Government may obtain a conviction if only one of the several allegations linked in the conjunctive in the indictment is proven, so may a defendant plead guilty to only one of the allegations required to prove an element of her crime." *Id.* (citation and internal quotation marks omitted). Viewed in its proper context, this footnote stands only for the proposition that, with respect to convictions based on jury verdicts and those obtained by guilty pleas, the legal effect is the same. The latter clause, quoted in isolation by the dissent, *post* at 86, in no way supports its assertion that guilty pleas are broader in scope. Nor does the *Valansi* court's use of the word "may" connote any duty on the part of a defendant to specify the precise basis for his conviction, else suffer the consequences.

Attempting to bolster its position, the dissent also relies on *United States v. Still*, 102 F.3d 118, 124-25 (5th Cir. 1996). *See post* at 87-88. However, the Fifth Circuit's observation in that case that "[w]hen Still pleaded guilty to count three [charging that he used *and* carried a firearm in violation of 18 U.S.C. § 924(c)(1), which prohibits such use *or* carrying], he admitted both to using and to carrying a firearm during and in relation to a drug trafficking crime," is in some tension with the court's subsequent decision in *Omari*. We are satisfied that *Omari*, which involved the application of the modified categorical approach to the Immigration and Nationality Act's "aggravated felony" exception to appellate jurisdiction of removal decisions, is the more apposite Fifth Circuit authority in this instance.

Furthermore, the dissent's theory is incompatible with our *Rhynes* precedent and its underlying principles, as enunciated in *Edwards v. United States*, 523 U.S. 511 (1998), and *United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975). *See Rhynes*, 206 F.3d at 379-81. The dissent's reliance on *United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502 (4th Cir. 2005), *post* at 86, is misplaced, as that decision stands only for the proposition that a guilty plea admits "all the elements of a formal criminal charge." *Id.* at 515. The "formal criminal charge," as explained in *Rhynes*, is nothing more than the least serious of the disjunctive statutory conduct, not the entirety of the conduct alleged in the conjunctive.

### B.

The materials in this case present a much flimsier foundation than that in *Shepard v. United States*, 544 U.S. 13 (2005), for determining the nature of the prior offenses. The charging documents against Vann relied on by the dissent, *see post* at 84-85, merely recite the language of the Indecent Liberties Statute, provide the dates of the alleged offenses and identities of Vann and the minor, and aver that the age requirements were satisfied. Each charging document alleges a violation of the Statute, without specifying either subsection thereof. And, consistent with North Carolina law, each properly alleges the indecent liberties offense in conjunctive fashion. Similarly, each judgment simply specifies the file number, identifies the offense as "Indecent Liberties with Minor Child" or "Indecent Liberties with Child," denotes the pertinent statute only as "14-202.1," and recognizes that no written findings were made. We disagree with the dissent that on this evidence we can conclude that Vann *necessarily* violated subsection (a)(2) of the Statute.

The dissent's view that each of Vann's three contested convictions violated subsection (a)(2) of the Statute is erroneous in multiple respects. First, it relies on evidence never pre-

sented to the district court.[6] It is one thing for a federal court to look at a state court docket in asserting jurisdiction over a removed case, or to note a subsequent arson conviction in determining the propriety of rescinding a fire insurance settlement offer. *See post* at 85 (citing *Lolavar v. de Santibañes*, 430 F.3d 221 (4th Cir. 2005); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989)). It is materially different to rest a sentencing decision — transforming a ten-year maximum into a fifteen-year minimum — on the basis of evidence never presented to the district court, particularly when such evidence was not requested until after oral argument.

Moreover, it bears emphasis that the basis of the dissent's view that Vann's convictions "necessarily" rest on subsection (a)(2) is that the charging documents simply recite the language of the Indecent Liberties Statute. Recently, however, we ruled that a conviction under a so-called *Alford* plea — where the defendant does not confirm the factual basis for the plea, *see North Carolina v. Alford*, 400 U.S. 25 (1970) — does not qualify as an ACCA predicate offense when the statutory definition contains both qualifying and non-qualifying predicate crimes and no other *Shepard*-approved documents establish the offense on which the defendant was convicted. *United States v. Alston*, 611 F.3d 219, 227-28 (4th Cir. 2010). As Judge Niemeyer properly recognized in *Alston*, "*Shepard*

---

[6]The state charging documents were not part of the district court record, but were obtained from the parties following the panel argument in this appeal. As such, the district court had no opportunity to consider the charging documents, nor did the parties have the opportunity to litigate their validity or gauge their implications. Thus, to the extent the propriety of treating Vann's convictions as qualifying ACCA violent felonies depends on the charging documents, the district court should consider those materials in the first instance. *See, e.g.*, *United States v. Alston*, 611 F.3d 219, 225 (4th Cir. 2010) (recognizing that "sentencing court" conducts ACCA analysis); *Sykes*, 131 S. Ct. at 2286 (Scalia, J., dissenting) ("Supreme Court briefs are an inappropriate place to develop the key facts in a case. We normally give parties more robust protection, leaving important factual questions to district courts and juries aided by expert witnesses and the procedural protections of discovery." (citation omitted)).

prevents sentencing courts from assessing whether a prior conviction counts as an ACCA predicate conviction by relying on facts neither inherent in the conviction nor admitted by the defendant." *Id.* at 226.

Under the *Alston* precedent, it is inconsistent for the dissent to find that Vann "necessarily" pleaded guilty to the subsection of the Statute (subsection (a)(2)) that the dissent and Judge Keenan's concurrence deem a violent felony under the ACCA. Indeed, to borrow from *Alston* its analogy derived from *Shepard* and from *Taylor v. United States*, 495 U.S. 575 (1990), if Vann had gone to trial in the underlying cases, any resulting conviction could only be used as an ACCA predicate conviction if the jury had returned a special verdict (or answered an interrogatory) specifically finding him guilty of violating subsection (a)(2) of the Statute. *See Alston*, 611 F.3d at 228. Instead, the dissent would have us engage in the very behavior the categorical approach is intended to avert: inappropriate judicial factfinding on appeal. *See Taylor*, 495 U.S. at 601 (explaining that categorical approach avoids difficulty associated with pleaded cases in which "there often is no record of the underlying facts").

When we consider Vann's charging documents in their proper legal context, we cannot determine that he was convicted of violating subsection (a)(2) of the Statute. Consequently, Vann's indecent liberties offenses are not ACCA violent felonies.

## II.

Pursuant to the foregoing, we vacate the sentence imposed by the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

KING, Circuit Judge, concurring:

Although the en banc majority utilizes the modified categorical approach to analyze whether a prior conviction for violating North Carolina General Statute section 14-202.1 (the "Indecent Liberties Statute" or "Statute") qualifies as an ACCA "violent felony," I am convinced that we are required by precedent to evaluate Vann's convictions under the Statute by sole resort to the categorical approach. Either approach produces the same result in Vann's case, but tomorrow is another day.[1] I fear that our Court's stamp of approval on future ACCA enhancements predicated on the inappropriate invocation of the modified categorical approach will contravene Supreme Court precedent and the interests of justice.

I.

Whether an offense constitutes a "violent felony" under the ACCA is a question of law that we review de novo. *See United States v. White*, 571 F.3d 365, 367 (4th Cir. 2009). Nevertheless, as a federal court evaluating a state offense, we are "bound by the [state supreme court's] interpretation of state law, including its determination of the elements of" the offense. *Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010). Where the state's highest court has not decided an issue of state law, the federal courts defer to state intermediate appellate court decisions, unless we are convinced that the state supreme court would rule to the contrary. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) (citing *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)). Deference to the intermediate appellate court makes espe-

---

[1]The result of today's en banc decision, as expressed in the Court's judgment, is ten votes (Chief Judge Traxler and Judges Wilkinson, Motz, King, Gregory, Agee, Davis, Keenan, Wynn, and Diaz) to vacate Vann's ACCA-enhanced sentence and remand for resentencing on the ground that his convictions under the Indecent Liberties Statute do not constitute ACCA violent felonies, against two votes (Judges Niemeyer and Shedd) to affirm Vann's sentence.

cially good sense in jurisdictions like North Carolina, where the decisions of the Court of Appeals of North Carolina are binding on all state courts save its highest, and panel opinions bind subsequent panels. *See State v. Jones*, 598 S.E.2d 125, 133 (N.C. 2005) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." (internal quotation marks omitted)).

## II.

The ACCA's provision for an enhanced sentence — a statutory range of fifteen years to life — is applicable when a defendant has "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as an offense punishable by imprisonment for a term exceeding one year that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B). The issue in this appeal is whether Vann's previous convictions for violating the Indecent Liberties Statute constitute violent felony convictions under the "residual clause" of § 924(e)(2)(B)(ii) — that is, whether his indecent liberties offenses "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another."

A.

1.

In assessing whether a previous offense properly constitutes an ACCA violent felony, the federal courts typically employ the "categorical approach," under which we consider the fact of conviction and the elements of the offense, but not the particular underlying acts. *See James v. United States*, 550 U.S. 192, 202 (2007); *Taylor v. United States*, 495 U.S. 575, 599-602 (1992). If "the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiry into the specific conduct of [the] particular offender," the previous offense is a violent felony for sentencing purposes. *James*, 550 U.S. at 202 (emphasis omitted).

In limited circumstances, however, the courts may take account of more than the fact of conviction and the bare elements of the previous offense, resorting to the "modified categorical approach." *See United States v. Harcum*, 587 F.3d 219, 223 (4th Cir. 2009). Use of the modified categorical approach is only appropriate when the statute of conviction encompasses multiple distinct categories of behavior, and at least one of those categories constitutes an ACCA violent felony. *See Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010). The modified categorical approach permits a sentencing court, in conducting its ACCA analysis, to determine which category of behavior underlies the conviction. *See id.*

To illustrate, a statute might criminalize both the burglary of a building and the burglary of a motor vehicle. *See, e.g.*, Mass. Gen. Laws, ch. 266, § 16. Inasmuch as the burglary of a vehicle is not a violent felony under the ACCA, the categorical approach would preclude a sentencing court from counting any conviction under that statute toward an ACCA enhanced sentence. *See Shepard v. United States*, 544 U.S. 13, 16-17 (2005). The modified categorical approach, however, authorizes the court to divide the prohibited conduct into

two categories: burglary of a building (an ACCA violent fel-
ony) and burglary of a vehicle (not an ACCA violent felony).
*See id.*

In applying the modified categorical approach, a sentencing
court is entitled to consult certain court records, such as
charging documents, plea agreements, transcripts of plea col-
loquies, judicial findings of fact and conclusions of law, jury
instructions, and verdict forms. *See Shepard*, 544 U.S. at 26.
These "*Shepard*-approved documents" may identify which
category of behavior underlies a defendant's previous convic-
tion, enabling the sentencing court to determine whether that
offense constitutes an ACCA violent felony — e.g., burglary
of a building. *See id.*

The modified categorical approach thus serves to augment
the record on which a sentencing court may rely, allowing the
court to "choose the right category" of offending behavior
with respect to a previous conviction under a broad statute.
*Chambers v. United States*, 129 S. Ct. 687, 690 (2009). Like
the categorical approach, however, the modified categorical
approach does not authorize a sentencing court to use
*Shepard*-approved documents to consider the particular acts
underlying the previous conviction. *See id.* Thus, regardless
of which analytical approach applies, a conclusion that a pre-
vious offense constitutes an ACCA violent felony must derive
solely from the category of behavior regulated. *See id.*

2.

Notably, Vann's previous indecent liberties offenses do not
have any element of force, are neither burglary, arson, nor
extortion, and did not involve explosives. Those offenses,
therefore, can only constitute ACCA violent felonies if they
fall within the ambit of the residual clause.[2] The task of prop-

---

[2]Before the panel in this appeal, the government maintained that, in
light of the essential age disparity between a child victim and an adult per-

erly analyzing that question is more difficult than it might first appear; ascertaining the breadth of the residual clause has been a challenging endeavor for the federal courts.

In *Begay v. United States*, 553 U.S. 137, 142 (2008), the Supreme Court explained that not every felony offense involving a risk of injury to a third party must be considered a violent felony under the ACCA. To fall within the residual clause, the previous offense must be "roughly similar, in kind as well as in degree of risk posed," to the ACCA-enumerated crimes of burglary, arson, extortion, and offenses involving explosives. *Id.* at 143. The Court elaborated that the enumerated offenses "typically involve purposeful, violent, and aggressive conduct," and such conduct makes it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 145 (internal quotation marks omitted). In order to qualify as an ACCA violent felony, the previous offense must be one that is "characteristic of the armed career criminal," tending to "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Id.* at 145-46 (internal quotation marks omitted). Applying those principles, the *Begay* Court ruled that a felony DUI under New Mexico law, which the Court considered to be similar to a strict liability crime, is not "associated with a likelihood of future violent, aggressive, and purposeful 'armed career criminal' behavior." *Id.* at 148. The New Mexico felony DUI was thus

---

petrator under the Indecent Liberties Statute, a violation thereof implies constructive force. Thus, the government contended, such a violation is necessarily an ACCA violent felony, because it has "as an element, the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In its en banc brief, however, the government abandoned that position, the argument having been foreclosed by the Supreme Court's recent decision in *Johnson*. *See* 130 S. Ct. 1265. There, the Court explained that, in order to constitute a violent felony under § 924(e)(2)(B)(i), the predicate offense must have violent physical force as an element; slight touching, "intellectual force or emotional force," is insufficient. *See id.* at 1270.

determined by the Court to be outside the scope of the residual clause. *See id.*

After the *Begay* decision, our Court had occasion to evaluate whether a violation of Virginia's statutory rape law — which makes it a criminal offense for a person to "'carnally know[ ], without the use of force, a child'" between the ages of thirteen and fifteen — constitutes a violent felony under the residual clause. *United States v. Thornton*, 554 F.3d 443, 444 (4th Cir. 2009) (alteration in original) (quoting Va. Code Ann. § 18.2-63). In *Thornton*, the government maintained that all violations of the Virginia statute were, similar to the enumerated offenses of § 924(e)(2)(B)(ii), necessarily purposeful, creating a serious risk of confrontation and bodily injury (including pregnancy and sexually transmitted diseases). *See id.* at 447.

We rejected the government's position in *Thornton*, however, reasoning that Virginia's definition of carnal knowledge did "not support an inference that any or all instances of the offense are violent and aggressive." *See* 554 F.3d at 449. In so ruling, we recognized that nonforcible adult-minor sexual activity does not create risks that are "roughly similar, in kind as well as in degree of risk posed, to the examples of burglary, arson, extortion, and crimes involving explosives." *Id.* at 446 (internal quotation marks omitted). Notably, we explained that "[t]he enumerated crimes create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crimes themselves." *Id.* at 449. On the other hand, the risks associated with statutory rape "are not immediate or violent in nature and do not inherently support an inference that an offender will later commit a violent crime." *Id.* Although we did not "minimize the risks associated with adult-minor sexual activity," we concluded in *Thornton* that "a conviction under Virginia's carnal knowledge offense is not 'associated with a likelihood of future violent, aggressive, and purposeful "armed career criminal"

behavior' and cannot constitute a violent felony under the ACCA." *Id.* (quoting *Begay*, 553 U.S. at 148).

Earlier this year, in *Sykes v. United States*, the Supreme Court revisited the breadth of the residual clause, concluding that the Indiana offense of knowingly fleeing from a law enforcement officer in a motor vehicle constitutes an ACCA violent felony. *See* 131 S. Ct. 2267 (2011).[3] The Court recognized that, based on the elements of that offense, fleeing from the police in a vehicle is a deliberate act that presents risks of third-party physical injury similar to the enumerated crimes of arson and burglary. *See id.* at 2273-74. More particularly, both arson and vehicular flight involve an "intentional release of a destructive force dangerous to others." *Id.* at 2273. Likewise, the risks posed by vehicular flight are similar to those presented by a burglary, in that both offenses "can end in confrontation leading to violence." *Id.*

The Supreme Court thus rejected Sykes's contention that his vehicular flight offense did not entail the type of conduct necessary to bring it within the ACCA's residual clause. *See Sykes*, 131 S. Ct. at 2275. As the Court explained, the analysis should focus on the level of risk associated with the previous offense of conviction, notwithstanding the "purposeful, violent, and aggressive" conduct stressed by the *Begay* Court in the context of a strict liability offense. *See Sykes*, 131 S. Ct. at 2275. Significantly, the *Sykes* decision reiterated that the ACCA

> limits the residual clause to crimes "typically committed by those whom one normally labels 'armed career criminals,'" that is, crimes that "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger."

---

[3]The Supreme Court issued its *Sykes* decision in June 2011, subsequent to our en banc argument. We thereafter obtained supplemental briefing on the potential effect of *Sykes* on this appeal.

*Id.* (quoting *Begay*, 553 U.S. at 146). Thus, although *Sykes* may be said to distance the Court from its earlier emphasis on purposeful, violent, and aggressive conduct, the essential hallmarks of *Begay* were reaffirmed.

## B.

Vann maintains that we are obliged to employ the categorical approach in our analysis, the inevitable consequence of which is that his previous indecent liberties offenses cannot be considered ACCA violent felonies. The government entreats to the contrary, insisting that we should invoke the modified categorical approach, which, it posits, establishes that Vann's previous convictions are for ACCA violent felonies. The government alternatively asserts that, regardless of the approach used, we are bound to affirm the sentence imposed by the district court.

## 1.

Importantly, a violation of the Statute does not require physical contact. *See, e.g.*, *State v. Hammett*, 642 S.E.2d 454, 459 (N.C. Ct. App. 2007). Additionally, the physical proximity of the offender to the victim is not determinative; convictions have been obtained in situations where the offender has been merely constructively present, i.e., by making inappropriate telephone calls or secretly videotaping a minor during a change of clothing. *See State v. Every*, 578 S.E.2d 642 (N.C. Ct. App. 2003) (telephone conversations); *State v. McClees*, 424 S.E.2d 687 (N.C. Ct. App. 1993) (clandestine videotaping).

Because a violation of the Indecent Liberties Statute does not require either touching or physical proximity, and does not necessarily implicate any awareness on the part of the minor victim, the risks associated with its proscribed conduct are fundamentally different than those associated with the offenses enumerated in 18 U.S.C. § 924(e)(2)(B)(ii). A viola-

tion of the Statute does not categorically involve a release of a destructive force capable of causing physical injury to another, as would an arson or offense involving explosives. Nor does a violation of the Statute necessarily show a disregard for the safety of others, as does vehicular flight from the police. *See Sykes*, 131 S. Ct. at 2273-74. Similarly, the risks posed by a violation of the Statute are unlike those posed by a burglary, as there exists no categorical likelihood that a violation would "end in [a] confrontation leading to violence." *Id.* at 2273.[4]

Moreover, although an accused must knowingly commit the acts underlying an indecent liberties conviction in North Carolina, a good faith "mistake of age is not a defense to the offense of taking indecent liberties with a minor." *Cinema I Video, Inc. v. Thornburg*, 351 S.E.2d 305, 320 (N.C. Ct. App. 1986). A violation of the Indecent Liberties Statute therefore resonates in strict liability, reminiscent of the *Begay* DUI offense, which is not an ACCA violent felony. *See* 553 U.S. at 148.

Unlike the offenses of vehicular flight and those enumerated in § 924(e)(2)(B)(ii) — each of which "create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crimes themselves," *Thornton*, 554 F.3d at 446 — a violation of the Indecent Liberties Statute is not the type of offense "'typically committed by those whom one normally labels armed career criminals,'" *Sykes*, 131 S. Ct. at 2275 (quoting *Begay*, 553 U.S. at 146 (internal quotation marks omitted)). At bottom, a violation of the Stat-

---

[4]Interestingly, the Indecent Liberties Statute is not codified with such crimes as rape — including statutory rape, *see* N.C. Gen. Stat. § 14-27.7A — at Subchapter III ("Offenses Against the Person"). Instead, the Statute is in Subchapter VII ("Offenses Against Public Morality and Decency"), alongside offenses like incest, *see id.* § 14-178; bigamy, *see id.* § 14-183; indecent exposure, *see id.* § 14-190.9; displaying material harmful to minors, *see id.* § 14-190.14; and secretly peeping into a room occupied by another person, *see id.* § 14-202.

ute, although a serious offense, is unlikely to "'show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger.'" *Id.* (quoting *Begay*, 553 U.S. at 146). As a result, such a violation is categorically not a violent felony under the ACCA.

2.

Having concluded that Vann's indecent liberties convictions are categorically not violent felonies within the meaning of the ACCA, I would reject the government's invitation to reach a different result through application of the modified categorical approach. The categorical approach, when it applies — as it does here — is mandatory and dispositive. *See United States v. Rivers*, 595 F.3d 558, 564 (4th Cir. 2010) (instructing that, where "the statute only contains one category of crime . . . a court may not vary from the categorical approach"). Importantly, there is no precedent for the proposition that the categorical approach is a tool of convenience that can be discarded when the other methodology might advance the government's interest.

On the face of the Indecent Liberties Statute, it may appear that its subsection (a)(1) (taking any indecent liberty with a child for the purpose of arousing or gratifying sexual desire) and its subsection (a)(2) (committing any lewd or lascivious act upon or with the body of a child) could regulate sufficiently distinct behaviors to justify our use of the modified categorical approach. If we were writing on a blank slate, I might conclude that a violation of subsection (a)(1) is a less serious offense that does not require physical contact with the minor victim, while a violation of subsection (a)(2) is a more serious offense that requires some form of physical contact — a lewd or lascivious act upon the body of a child.

The North Carolina courts, however, have declined to so interpret the Statute. And time-tested principles of federalism bar us from construing it otherwise. *See Johnson v. Fankell*,

520 U.S. 911, 916 (1997) (explaining that no "federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State"). As Justice Stevens explained for the unanimous Court in *Johnson*, the foregoing "proposition is fundamental to our system of federalism." *Id.*

The courts of North Carolina have ruled time and again that, in enacting the Statute, the state legislature chose not to "distinguish between the types of indecent liberties," *State v. Jones*, 393 S.E.2d 585, 589 (N.C. Ct. App. 1990), and instead made "[t]he crime of indecent liberties . . . a single offense," *State v. Hartness*, 391 S.E.2d 177, 180 (N.C. 1990); *see also State v. Jones*, 616 S.E.2d 15, 20 (N.C. Ct. App. 2005) (rejecting proposition that "[s]ubsections (a)(1) and (a)(2) are separate criminal offenses with different elements" (emphasis omitted)). In order to prove an offense under the Statute, the State must establish five elements:

> (1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Coleman*, 684 S.E.2d 513, 519 (N.C. Ct. App. 2009) (internal quotation marks omitted). In prosecutions under subsection (a)(2) involving a lewd or lascivious act, "[h]owever, it may be logically assumed that acts described as 'lewd' and 'lascivious' are committed 'for the purpose of arousing or gratifying sexual desire.'" *State v. Wilson*, 361 S.E.2d 105, 108 (N.C. Ct. App. 1987). Nonetheless, neither subsection of the Statute requires as proof of an essential element any kind of touching — sexual or otherwise. *See Hammett*, 642 S.E.2d at 459 (rejecting contention "that, in order to be convicted under [subsection (a)(2)], the accused must actually touch the

victim"); *Every*, 578 S.E.2d at 648 (recognizing that subsection (a)(1) does not require touching).

Although theoretically distinguishable, the Indecent Liberties Statute's two subsections have been treated interchangeably by the North Carolina courts, and those courts have consistently recognized that the same behavior can be prosecuted under either subsection. *See, e.g.*, *State v. Banks*, 370 S.E.2d 398, 407 (N.C. 1988) (prosecuting "acts of kissing" under subsection (a)(1) and subsection (a)(2)). Indeed, persons engaging in the same objectionable behavior, not involving physical contact, are sometimes prosecuted under subsection (a)(1), but otherwise under subsection (a)(2). *See Hammett*, 642 S.E.2d at 459 (prosecuting masturbation in another's presence under subsection (a)(2)); *State v. Turman*, 278 S.E.2d 574, 575 (N.C. Ct. App. 1981) (same; subsection (a)(1)); *State v. McClees*, 424 S.E.2d 687 (N.C. Ct. App. 1993) (prosecuting videotaping of disrobing teenager under subsection (a)(1)); *State v. Kistle*, 297 S.E.2d 626 (N.C. Ct. App. 1982) (prosecuting photographing of unclothed child under subsection (a)(2)).

Deference to the North Carolina courts in this instance is consistent with the approach followed by the Supreme Court in similar cases. In *James*, the Court considered whether attempted burglary under Florida law categorically qualified as an ACCA violent felony. The Court began by noting that "[o]n its face, Florida's attempt statute requires only that defendant take 'any act toward the commission' of burglary." 550 U.S. at 202. The Court, however, then consulted the interpretation of the attempt statute by Florida courts, which "considerably narrowed" its application by requiring that the "act" be "directed toward the entry of a structure." *Id.* The Court conducted a similar analysis regarding the scope of "curtilage" under the burglary law. *See id.* at 212-13 ("We must again turn to state law in order to answer this question."); *see also Johnson*, 130 S. Ct at 1269-70 (relying on the state courts' construction of the required degree of "touching"

under the state battery law). The Supreme Court has therefore rejected an approach that simply considers the statutory text and instead has grounded its analysis on the state courts' construction of the statute.

Thus, "the particular act performed is immaterial," and the accused's "purpose for committing such act is the gravamen of this offense." *Hartness*, 391 S.E.2d at 180. Because, under North Carolina law, the Indecent Liberties Statute's two subsections are interchangeable and do not have different elements, the Statute regulates only one category of behavior. *Cf. Rivers*, 595 F.3d at 564 (declining to apply modified categorical approach to South Carolina blue light statute because "[t]here is no varied behavior underlying the elements of a blue light offense"). A violation of the Statute, therefore, does not fall in that "narrow range of cases" where the court is entitled to "go beyond the mere fact of conviction" in making a violent felony determination. *See Taylor*, 495 U.S. at 602.

## III.

### A.

My good dissenting friends, as well as several of my colleagues in the en banc majority, disagree that we are bound by North Carolina precedent to conclude that subsections (a)(1) and (a)(2) of the Indecent Liberties Statute regulate the same category of behavior, thereby foreclosing resort to the modified categorical approach.[5] Indeed, whether a violation of

---

[5]My good friend Judge Niemeyer denominates his opinion as "concurring in part and dissenting in part," but it is rather amorphous what that nomenclature means. Judge Niemeyer is certainly dissenting from the en banc judgment vacating Vann's sentence and remanding for resentencing, however, and he does not concur in either the per curiam opinion of the en banc majority or any of the Court's several other opinions. The *judgment* of the Court to vacate and remand is unitary, and may not be parsed as Judge Niemeyer suggests, *post* at 67-68 & nn. 1-2, though various

subsection (a)(2) constitutes a violent felony under the ACCA is quintessentially a federal question.

The ultimate federal question of whether the ACCA applies, however, can only be answered through the resolution of component inquiries, one of which is the number of offenses encapsulated in a single state statute. If the state courts have provided the answer to that subordinate question, we are obliged to accept it. *See Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010) (citing *Johnson v. Fankell*, 520 U.S. 911, 916 (1997)). In this case, the answer to the subordinate question of the number of offenses set forth in the Indecent Liberties Statute has been provided by the Supreme Court of North Carolina in *State v. Hartness*, 391 S.E.2d 177, 180 (N.C. 1990), and the State's intermediate appellate courts, *see State v. Jones*, 393 S.E.2d 585, 589 (N.C. Ct. App. 1990); *see also State v. Jones*, 616 S.E.2d 15, 20 (N.C. Ct. App. 2005). That answer is "one." Because the answer is not "two or more," the modified categorical approach cannot apply to Vann's situation.[6]

---

judges supporting the judgment may express through separate *opinions* different reasons for so doing, and may even agree with judges opposed to the judgment as to constituent propositions or conclusions short of the ultimate issue. *See* Fed. R. App. P. 36 (specifying that clerk enters "judgment" upon receiving court's conceptually distinct "opinion" or instructions); Fed. R. App. P. 41(a) (defining court's mandate as comprised of, inter alia, "a certified copy of the judgment [and] a copy of the court's opinion, if any"). Thus, although Judge Niemeyer might accurately predict, *post* at 68 n.2, that a majority of this Court, in a hypothetical future case, would somehow conclude a properly proved violation of subsection (a)(2) to be an ACCA violent felony, there is certainly no majority consensus emanating from our decision today as to why that may be so.

[6]The non-precedential decision of the Court of Appeals of North Carolina in *State v. Moss*, No. COA07-607, 2008 WL 435095 (N.C. Ct. App. Feb. 19, 2008) (unpublished), trumpeted by the dissent, *post* at 82-83, is in no way contrary to the consistent body of authoritative North Carolina case law. The court in *Moss* vacated the defendant's conviction under the Indecent Liberties Statute because a so-called "fatal variance" at trial

Had the court in *Hartness* ventured beyond a pure construction of state law to address the broader federal question of whether a violation of the Statute implicates the ACCA, its decision would be of little moment here and the dissent would have a point. *See Johnson v. United States*, 130 S. Ct. at 1269 (rejecting contention that federal courts are bound by state court interpretation of terms found in federal statute). But the *Hartness* court did not stray outside its domain, and there is, therefore, no point to be had.

The dissent's reluctance to accept the Indecent Liberties Statute as interpreted by the North Carolina courts flouts well-settled principles of federalism. Our system of dual government unequivocally designates the state courts as the arbiters of state law, and it demands that federal courts not usurp that function. *See Johnson v. Fankell*, 520 U.S. at 916 (underscoring that no "federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State").

B.

Even accommodating the position that the two subsections of the Indecent Liberties Statute are separate offenses, however, Vann prevails under the modified categorical approach.[7]

amounted to plain error. The variance occurred because the indictment charged the defendant solely under subsection (a)(1), but the jury was instructed to convict only if it found the specific conduct underlying subsection (a)(2). *See id.* at *2. The court's decision was not premised, as the dissent would have it, upon the two subsections describing different offenses, but upon the deprivation of fundamental due process rights "on a *theory* not supported by the indictment." *Id.* at *3 (emphasis added).

[7]Notwithstanding my friend Judge Niemeyer's characterization of my opinion, *post* at 67, my view of this appeal is unabashedly uncomplicated. The categorical approach resolves the sentencing issue in Vann's favor, and we are not entitled to reach and address the modified categorical approach. Assuming the modified categorical approach applies, however, Vann prevails in any event.

The offense of sexual assault contained within the Model Penal Code is not, as the dissent supposes, a stand-in for subsection (a)(2). *See post* at 78-79. Although portions of the text describing the Code's sexual assault offense bear some superficial similarity to subsection (a)(2), North Carolina precedent demonstrates that the essential elements of the two provisions are materially dissimilar.

Most pertinently, a sexual assault under the Code has as an element "sexual contact with another," defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." Model Penal Code § 213.4. A violation of the Statute via subsection (a)(2), on the other hand, requires no touching or physical contact at all. *See State v. Hammett*, 642 S.E.2d 454, 459 (N.C. Ct. App. 2007) (masturbating in presence of minor violates subsection (a)(2)); *State v. Kistle*, 297 S.E.2d 626, 628 (N.C. Ct. App. 1982) (photographing nude minor violates subsection (a)(2)).

All the sound and fury summoned forth by the dissent, spewing statistics documenting the injury rate for sexual assault victims, hence signifies nothing. The dissent frankly admits that the study it cites "included conduct that may have a higher incidence of physical harm, like rape," *post* at 94, illustrating one problem of using statistics to pinpoint "the ordinary case — *i.e.*, the most common form" of an offense for the purpose of determining its potential risk of physical injury to another. *Sykes v. United States*, 131 S. Ct. 2267, 2291 n.4 (2011) (Kagan, J., dissenting). Even the *Sykes* majority acknowledged that "statistics are not dispositive," but are merely useful in an appropriate context to inform a court's "commonsense conclusion" regarding an offense's character as an ACCA violent felony. *Id.* at 2274.

Here, common sense dictates the conclusion that significant differences exist between the risk of physical injury occasioned in the ordinary case by violations of subsection (a)(2) and the risk typically presented by the intentional vehicular

flight offense at issue in *Sykes*. Committing a lewd or lascivi-
ous act upon the body of a minor does not "def[y] a law
enforcement command" and "entail[ ] intentional release of a
destructive force dangerous to others." 131 S. Ct. at 2273.
Unlike vehicular flight, immediate police confrontation is not
the "expected result" of a subsection (a)(2) violation, inevita-
bly "plac[ing] property and persons at serious risk of injury."
*Id.* at 2274. According to the *Sykes* Court, a "[r]isk of vio-
lence" inheres in the offense of vehicular flight. *Id.* I discern
no similar risk inherent in ordinary violations of subsection
(a)(2), notwithstanding the worst-case scenarios paraded by
the dissent, *post* at 95-96, the most sinister aspects of which
entail empty threats of physical violence.[8]

The mention in *Sykes* of the risk of violence, apart from the
risk of physical injury, is hardly surprising in light of the
Court's ultimate task of deciding whether vehicular flight
should be deemed a "violent felony." The dissent chides me
for daring to determine whether a putative violent felony "in-
volve[s] . . . purposeful, violent, and aggressive conduct," *post*
at 67, but I think the prescribed commonsense approach coun-
sels just that sort of inquiry. The residual clause speaks sim-
ply of the "risk of physical injury," without specifying the
injury's kind or degree, but the *Sykes* Court's recitation of the
risk of violence as a factor in its calculus indicates that we
should consider, at least at the margins, what makes a particu-
lar felony "violent." There is, after all, a principled difference
between a hangnail and a homicide.

---

[8]Writing separately in *Sykes*, Justice Thomas observed that "[t]he fact
that Sykes can imagine a nonrisky way to violate [the Indiana statute] does
not disprove that intentional vehicular flight is dangerous in the ordinary
case." *Sykes*, 131 S. Ct. at 2281 (Thomas, J., concurring in the judgment)
(citation and internal quotation marks omitted). Surely the converse propo-
sition is also true: that the dissent can illustrate risky ways to violate sub-
section (a)(2) does not establish that such violations are dangerous in their
most common form.

In that vein, and without understating the despicability of the conduct underlying violations of the Indecent Liberties Statute or the conduct's propensity to inflict psychic harm upon its target, I cannot help but pay heed to the common-sense notion that vehicular flight is far more likely to end violently in death or debilitating physical injury. Moreover, dissimilar to the discrete perpetrator/victim dynamic invariably associated with a violation of subsection (a)(2), the sphere of effect with attendant risk of injury emanating from vehicular flight extends far beyond whoever occupies the passenger seat to envelop the driver, the police, and innocent bystanders. *See Sykes*, 131 S. Ct. at 2274 (citing Justice Thomas's concurring opinion to emphasize that violations of the Indiana statute "are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another," and expressing concern that "chase-related crashes *kill* more than 100 nonsuspects every year" (emphasis added)). Engaging in this sort of intentional conduct evidencing a flagrant "lack of concern for the safety of property and persons of pedestrians and other drivers," *id.* at 2273, distinguishes the vehicular flight defendant from the drunk driver in *Begay v. United States*, 553 U.S. 137 (2008), and we may conclude that the former is more likely to be "the kind of person who might deliberately point the gun and pull the trigger." *Sykes*, 131 S. Ct. at 2275 (quoting *Begay*, 553 U.S. at 145-46 (internal quotation marks omitted)).[9]

---

[9]I admire and appreciate the characteristically well-crafted separate opinion of my good friend Judge Wilkinson, concurring in the judgment, but I take especial issue with one aspect of it. Employing the categorical approach in this case would not, as the separate opinion prognosticates, "have the unintended effect of visiting serious harms on children." *Post* at 63. This opinion simply results, as do the various separate opinions, from conscientious efforts to apply the applicable law to the relevant facts. Indeed, our Court possesses no power or authority to do otherwise. The concern of my good friend should therefore not be directed at his court colleagues, but to the governmental bodies that created the controlling legal principles. That said, I am pleased that my friend agrees with the result that our Court has reached in this case.

IV.

All that said, I concur in the judgment of the Court, as reflected in the per curiam opinion in that regard. I disagree with several of my colleagues of the en banc majority, however, in that I believe that the categorical approach resolves this appeal and that the modified categorical approach should therefore not be reached. I am pleased and honored to confirm that Judge Motz, Judge Gregory, and Judge Davis join in this opinion.

AGEE, Circuit Judge, concurring in the judgment, concurring in the en banc majority opinion, and concurring in the opinion of Judge Keenan:

"Only Congress can rescue the federal courts from the mire into which ACCA's draftsmanship and *Taylor*'s 'categorical approach' have pushed us," Justice Alito presciently observed in *Chambers v. United States*, 555 U.S. 122, 132 (2009) (Alito, J., concurring). As the multiple opinions in this case reflect, no matter how diligently and painstakingly my colleagues and I labor over the mystery of the ACCA "residual clause," a black hole of confusion and uncertainty stymies our best efforts.

Once application of the ACCA enhancement departs from the clarity in § 924(e)(2)(B)(ii) — "burglary, arson, or extortion, involves the use of explosives" — and seeks to ascertain prior criminal convictions that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another," we enter a judicial morass that defies systemic solution.* *Id.* The dockets of our court and all federal courts are now clogged with these cases. Unless Congress acts to provide clarity to its intent for this statute, the problem will only continue.

---

*The same concern applies with equal force to the indistinguishable application of similar enhancements under United States Sentencing Guidelines § 4B1.2.

All of my colleagues who have written in this case have made a good faith effort to bring some sense of order and direction to a congressional expression, however well intentioned, that was poorly drafted and seemingly defies the best efforts of us all to apply the "residual clause" within the intendment of Congress. While the dilemma we face in our task of adjudication is difficult enough, it pales in comparison to what is at stake for the parties: be it the defendant or the general public as represented by the Government. The doubling (or more) of a sentence to the ACCA minimum mandatory sentence of 15 years imprisonment should be of grave concern when that decision is based on statutory language that a member of the Supreme Court has concluded "does not give a person of ordinary intelligence fair notice of its reach. . ." and "is too vague to yield an intelligible principle." *Sykes v. United States*, 564 U.S. ___, slip op. at 7, 8 (2011) (Scalia, J., dissenting).

As Justice Alito concluded in *Chambers*:

> [a]t this point, the only tenable, long-term solution is for Congress to formulate a specific list of expressly defined crimes that are deemed to be worthy of ACCA's sentencing enhancement. That is the approach that Congress took in 1984, when it applied ACCA to two enumerated and expressly defined felonies. And that approach is the only way to right ACCA's ship.

555 U.S. at 134 (Alito, J., concurring).

Should Congress fail to act to timely rewrite this statute in a comprehensible and practical way, it will have only itself to blame should a majority of the Supreme Court come to find Justice Scalia's conclusion the only constitutionally valid course.

DAVIS, Circuit Judge, concurring:

I am pleased to join Judge King's fine opinion in full. He demonstrates that without doubt the correct approach in this case (and to the North Carolina indecent liberties statute generally) is the categorical approach and not the modified categorical approach. I write separately to offer the following additional observations.

I.

I admire the thoughtful efforts of my authoring colleagues to rationalize the challenging legal standards confronting us. As I understand the opinions that contend the modified categorical approach applies in this case, three distinct constructs seem to be put forward: (1) the presumed legislative intent underlying the ACCA (Op. of Wilkinson, J.); (2) the supposed existence of a "categorically violent" subsection within the overall "nongeneric" indecent liberties statute (Op. of Keenan, J.); and (3) the assertion that the indecent liberties statute contains two "substantive" "generic" indecent liberties offenses, the "more violent" of which poses, as a matter of law in all instances, a "serious potential risk of physical injury" under the residual clause of the ACCA (Op. of Niemeyer, J.). With genuine respect for my colleagues' differing views, I believe for the following reasons that each of these constructs is infirm.

A.

Judge Wilkinson seems forthrightly to acknowledge that the North Carolina appellate courts have always treated the two discrete subsections of the indecent liberties statute interchangeably and in ways that, as Judge King shows, render it impossible, as a matter of logic or legal analysis, to differentiate among the two subsections as a categorical matter. In other words, viewed pragmatically, there are no discrete "categories" of offense behaviors from which to "choose." *See*

*ante* at 14 (Op. of King, J.). Thus, Judge Wilkinson effectively agrees with Judge King that as the indecent liberties statute has been interpreted and applied, no matter the acts committed by a particular defendant, that defendant is categorically amenable to prosecution under both subsection (a)(1) or subsection (a)(2) of the statute. Any plausible determination of a "risk of injury" within the contemplation of the ACCA residual clause is not driven by which statutory subsection a prosecutor invokes. The published opinions of the North Carolina appellate courts demonstrate that the state's prosecutors regularly take advantage of the generous prosecutorial discretion afforded by the indecent liberties statute. *See ante* at 22 (Op. of King, J.).

Nevertheless, although Judge Wilkinson seemingly eschews the contention that based on its "alternative elements" the indecent liberties statute can be treated as if it proscribed two categories of offense behaviors, he concludes that Congress should be deemed to have intended that offenders who have been convicted of what amounts to *physical sexual assaults* under the indecent liberties statute against minors should receive enhanced sentences when and if they are later convicted in federal court for a violation of 18 U.S.C. § 922(g)(1).

The difficulty with Judge Wilkinson's presumed-legislative-intent construct, of course, is that there is neither evidence nor established legal principle to support it. If we know nothing else about Congress, we know that Congress understands fully how to punish repeat wrongdoers who pose a danger to the community. *Cf.* 21 U.S.C. § 851 (2006). Congress did not list "sexual assault of a child" along with "burglary," "arson," "extortion," and "explosives offenses" as one of the enumerated offenses it included in the ACCA sentencing enhancement, although it has done so elsewhere. *See infra* n.1 (discussing application notes to U.S.S.G. § 2L1.2(b)(1)(A)). It could do so tomorrow if it wished.

Moreover, Judge Wilkinson acknowledges, in agreement with Judge King, that other provisions of North Carolina law cover a myriad of despicable, heinous acts of physical sexual depredation committed against adults as well as children. *See ante* at 19 n.4 (Op. of King, J.); *see also* N.C. Gen. Stat. Ch. 14, Subch. III, Art. 7A ("Rape and Other Sex Offenses"). There can be little doubt that such offenses will inevitably be captured by the ACCA residual clause as creating "a serious potential risk of physical injury to victims" (if not the more likely "use of physical force" clause). It is not easy to discern the need for a judicially-created supplement to Congress's (admittedly less than optimal) statutory design.

But Judge Wilkinson defends his conclusion as based on his belief that federalism concerns require federal judges to step in to fill gaps in the law left by the drafting decisions of state legislators, charging decisions of state prosecutors, and the law-making decisions of Congress itself. *See post* at 62 ("Other defendants [prosecuted and convicted solely under the indecent liberties statute] have been convicted of more serious forms of sexual assault, *see, e.g.*, *State v. Askew*, 643 S.E.2d 678 (N.C. Ct. App. 2007) . . . .") (Op. of Wilkinson, J.).[1] This notion is troubling.

---

[1]Judge Wilkinson's gap-filling approach effectively collapses the distinct but open-ended requirements of the residual clause of the ACCA, on the one hand, and the more refined requirements of the Sentencing Guidelines, on the other hand. *See, e.g.*, *United States v. Ramirez-Garcia*, 646 F.3d 778 (11th Cir. 2011). In *Ramirez-Garcia*, the same North Carolina indecent liberties statute before us was before the Eleventh Circuit. *Id.* at 779. The issue presented was whether a violation of the indecent liberties statute "constituted 'sexual abuse of a minor' and, thus, was a 'crime of violence' pursuant to the Sentencing Guidelines." *Id.* The applicable guideline, § 2L1.2(b)(1)(A), increased the base offense level for a violation of the illegal reentry statute, 8 U.S.C. § 1326(a) and (b)(2), if the defendant had a prior conviction for a "crime of violence." *Id.* at 781 & n.1. The application notes to U.S.S.G. § 2L1.2(b)(1)(A) defined a crime of violence to include "sexual abuse of a minor." *Id.* at 781 & n.2. Rejecting the modified categorical approach in favor of the categorical approach, the

With respect, Judge Wilkinson's argument in favor of application of the modified categorical approach in this case seems to me to rely heavily on a novel notion of federalism. All agree that federalism interests inform our work in cases such as this one. Nevertheless, I do not believe it was the purpose of Congress in enacting the ACCA "to punish particular types of crimes – serious drug offenses and violent felonies." *Post* at 56 (Op. of Wilkinson, J.). Rather, as the plain text of the statute reveals, the purpose of the ACCA is to *increase*

---

Eleventh Circuit held that a violation of the North Carolina indecent liberties statute indeed constituted "sexual abuse of a minor." Critical to its holding, the court relied on its precedents that "sexual abuse of a minor" is evidenced by "'a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification.'" *Id.* at 782 (quoting *United States v. Padilla–Reyes*, 247 F.3d 1158, 1163 (11th Cir. 2001)). In particular, the court "noted that the plain meaning of 'abuse' includes 'acts that involve physical contact between the perpetrator and the victim and acts that do not.'" *Id.*; *accord United States v. Izaguirre–Flores*, 405 F.3d 270, 271 (5th Cir. 2005) (per curiam) (holding that a violation of the North Carolina indecent liberties statute constituted "sexual abuse of a minor" under U.S.S.G. § 2L1.2(b)(1)(A)); *United States v. Salas*, 372 F. App'x 355, 2010 WL 1258242 (4th Cir. 2010) (per curiam) (unpublished) (same); *see United States v. Gonzalez-Michel*, 112 F. App'x 261, 262 (4th Cir. 2004) (per curiam) (unpublished) (noting defendant did not contend that a conviction under the North Carolina indecent liberties statute did not constitute "sexual abuse of a minor"); *see also Bahar v. Ashcroft*, 264 F.3d 1309, 1311, 1313 (11th Cir. 2001) (holding that term "sexual abuse of a minor," as used in 8 U.S.C. § 1101(a)(43)(A), includes all of the conduct proscribed by the North Carolina indecent liberties statute); *United States v. Gilbert*, 425 F. App'x 212, 2011 WL 1595055 (4th Cir. 2011) (per curiam) (unpublished) (holding that North Carolina's indecent liberties statute triggers sentencing enhancement under 18 U.S.C. § 2252A(b)(2), possession of child pornography).

Deeming it imperative to close a perceived gap in the punishments authorized by the residual clause of the ACCA resulting from the Supreme Court's "intricate webs of doctrine" thereunder in its crafting of the categorical approach to ACCA, Judge Wilkinson effectively imports a "sexual assault of a minor" refinement from the Sentencing Guidelines into the ACCA analysis in this case. Respectfully, it seems to me that such judicial lawmaking exceeds the proper bounds of our role.

*punishments* for certain federal offenders who unlawfully possess a firearm.

Nor are Article III judges the roving protectors of all children, from every conceivable harm, encountered everywhere. Rather, that role is quintessentially a police power retained by the individual sovereign states of our union. It would be wise not to confuse the important law-making tasks committed by our constitutional structure to the legislature of North Carolina (as implemented by its Executive Branch officials, including its prosecuting authorities) with the adjudicative tasks committed to federal judges. Judge Wilkinson's approach poses more questions than it answers.

B.

In contrast to Judge Wilkinson's "implied-legislative-intent/gap-filing" approach, Judge Keenan seems to rely on what might be described as a "blank slate" approach. *Cf. ante* at 20 (Op. of King, J.) ("If we were writing on a blank slate, I might conclude that a violation of subsection (a)(1) is a less serious offense that does not require physical contact with the minor victim, while a violation of subsection (a)(2) is a more serious offense that requires some form of physical contact — a lewd or lascivious act upon the body of a child."). Judge Keenan readily concedes that, under the circumstances presented here, she does not accept as authoritative the North Carolina appellate courts' repeated admonitions that the indecent liberties statute consists of "five fixed elements." *Post* at 52 n.1 (Op. of Keenan, J.). Rather, Judge Keenan seizes upon the patently ambiguous statement in *State v. Hartness*, 391 S.E.2d 177 (N.C. 1990), that the indecent liberties statute consists of "alternative elements." *See id.* (citing *Hartness*, 391 S.E.2d at 180). She then examines the "plain language" of the statute, as if undertaking to analyze it for the first time, and concludes, like the *Hartness* court did, that the statute contains "alternative elements." Unlike *Hartness*, however, Judge

Keenan is convinced that those "alternative elements" are nicely aligned in two structural subsections.

There are several unresolved difficulties with this approach. First, as Judge Keenan acknowledges, we are not free to reject the state courts' clear instruction as to the elements of the statute. To the extent, therefore, that Judge Keenan's rejection of the statutory elements is implicitly based on the conclusion that the "fixed elements" identified by North Carolina's courts are limited to subsection (a)(1) *only*, her approach is fundamentally flawed. There is no evidence that the elements are so limited, and, more importantly, there is overwhelming evidence that this is *not* so.

As Judge King correctly explains, the North Carolina Supreme Court and the North Carolina Court of Appeals have been unfailingly consistent in their identification of the *elements* of the indecent liberties statute:

> (1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Rhodes*, 361 S.E.2d 578, 579 (N.C. 1987); *State v. Thaggard*, 608 S.E.2d 774, 786–87 (N.C. 2005); *State v. Khouri*, No. COA10–1030, 2011 WL 3569504, at *4 (N.C. Ct. App. Aug. 16, 2011). Furthermore, in our non-precedential per curiam opinion in *United States v. Fernando*, 291 F. App'x 494 (4th Cir. 2008), we specifically identified the elements of the North Carolina indecent liberties statute as the five discrete elements listed above. *291 F. App'x at 495 n.2 (citing Thaggard, 608 S.E.2d at 786-87).*[2]

---

[2]*Fernando* was a prosecution under 18 U.S.C. § 2422(b) (prohibiting the use of interstate commerce to coerce or entice a minor to engage in

To be sure, no one reading the North Carolina indecent liberties statute could deny that it plainly criminalizes "lewd and lascivious acts upon or with the body of a child." But, as Judge King persuasively demonstrates, the better view is that the statutory provision, properly understood, cannot reasonably support application of the modified categorical approach in this case.[3]

The genealogy of the indecent liberties statute is instructive. The statute was enacted by the state legislature in 1955 and became effective on or about April 29, 1955. As originally enacted, the statute read as follows:

---

illegal sexual activity). Under that statute, a conviction may rest on an underlying violation of (or attempted violation of) state law, such as, in *Fernando*, the North Carolina indecent liberties statute.

[3]Importantly, as Judge King points out, the government has abandoned its contention that the "use of physical force" prong of the ACCA is applicable in this case. *Ante* at 15 n.2 (Op. of King, J.). As Justice Scalia explained in *Johnson*, it is "when the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, *some of which require violent force and some of which do not*," that the modified categorical approach is authorized. *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010) (emphasis added). *Johnson*, of course, was a "use of force" case and *Taylor* and *Shepard* were "enumerated offenses" cases. It is surprising, therefore, that those arguing in favor of applying the modified categorical approach have failed to reconcile support for their view with the manifest difference between the possible application of the "use of physical force" prong and the "risk of physical injury prong." They rely heavily on *Johnson*. Thus, their unspoken (but unmistakable) underlying assumption is that physical force is inherent in the "lewd and lascivious" manner of violating the indecent liberties statute. The North Carolina precedents spread throughout our raft of opinions in this case soundly rebut that assumption.

In any event, Judge Keenan's heavy reliance on what *Chambers* says "about" *Shepard*, and on *Johnson*'s "use of physical force" analysis, to justify application of the modified categorical approach in this "risk of injury" case, provides scant support for the application of the modified categorical approach here. *See post* at 50-54 (Op. of Keenan, J.).

Section 1. Any person over 16 years of age who, with intent to commit an unnatural sexual act, shall take, or attempt to take, any immoral, improper, or indecent liberties with any child of either sex, under the age of 16 years, or who shall, with such intent, commit, or attempt to commit, any lewd or lascivious act upon or with the body, or any part or member thereof, of such child, shall, for the first offense, be guilty of a misdemeanor and for a second or subsequent offense shall be guilty of a felony, and shall be fined or imprisoned in the discretion of the court. Sec. 2. All laws and clauses of laws in conflict with this Act are hereby repealed.

An Act to Provide for the Protection of Children from Sexual Psychopaths and Perverts, ch. 764, 1955 N.C. Sess. Laws 708, 708 (amended 1975).

Early on, defendants argued that the enactment of the statute effected an implied repeal of the existing North Carolina statute prohibiting crimes against nature, N.C. Gen. Stat. § 14-177. *See, e.g.*, *State v. Harward*, 142 S.E.2d 691 (N.C. 1965); *State v. Lance*, 94 S.E.2d 335 (N.C. 1956). The North Carolina Supreme Court flatly rejected that contention. *See Harward*, 142 S.E.2d at 694 (rejecting defendant's contention that passage of N.C. Gen. Stat. § 14-202.1 impliedly repealed the offense of attempt to commit a "crime against nature" or reduced it from a felony to a misdemeanor); *Lance*, 94 S.E.2d at 339 (holding that the offense of "crime against nature" was not impliedly repealed by N.C. Gen. Stat. § 14-202.1 insofar as the former concerns the commission of a "crime against nature" when the defendant is over sixteen years of age and the child is under sixteen years of age).

In rejecting this contention, the North Carolina Supreme Court explained that N.C. Gen. Stat. § 14-177 condemns "crimes against nature," including acts with animals and acts between humans whether committed against children or

adults, while the indecent liberties statute, N.C. Gen. Stat. § 14-202.1, condemns offenses of an "unnatural" sexual nature against children under sixteen years of age by those over sixteen years of age that could not "be reached and punished" under the "crime against nature" statute, as well as "other acts against children than unnatural sex acts." *Lance*, 94 S.E.2d at 339; *Harward*, 142 S.E.2d at 746. In drawing its conclusion that the legislative intent in passing N.C. Gen. Stat. § 14-202.1 was to supplement the "crime against nature" statute and to give broader protection to children, the Supreme Court relied on "The Law of Crime Against Nature," an article that called for a law covering "the entire subject of unnatural intercourse" and drafted a proposed statute, which incorporated a child molestation provision from a District of Columbia statute treating indecent liberties with a minor. *Harward*, 142 S.E.2d at 694; James R. Spence, The Law of Crime Against Nature, 32 N.C. L. Rev. 313, 323–24 (1954) (citing D.C. Code Ann. § 22-3501 (1951)). The Supreme Court explained that it was "reasonable to infer that the [North Carolina] General Assembly fully considered the recommendations made" by the article in passing the North Carolina indecent liberties statute. *Harward*, 142 S.E.2d at 694. Notably, the District of Columbia statute, on which N.C. Gen. Stat. § 14-202.1 was modeled, contained elements wholly consistent with the contemporary elements of the North Carolina indecent liberties statute. *See Allison v. United States*, 409 F.2d 445, 451 (D.C. Cir. 1969) (listing "(1) taking immoral, improper, or indecent liberties with (2) a child under the age of 16, (3) with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the child or of the accused" as the elements of the indecent liberties with a minor child offense).

As mentioned, the original North Carolina indecent liberties statute consisted of a single statutory provision without subsections. *See* N.C. Gen. Stat. § 14-202.1 (Replacement 1969). Indeed, the legislature did not create what are now separate subsections (a)(1) and (a)(2) until 1975, twenty years

after the enactment of the statute. *See* An Act to Amend G.S. 14-202.1, 1975 N.C. Sess. Laws 1105. This amendment also removed the requirement of intent to commit an unnatural sexual act and increased the punishment, making the offense a felony rather than a misdemeanor. 1975 N.C. Sess. Laws 1105; *State v. Banks*, 370 S.E.2d 398, 407 (N.C. 1988). But, the Supreme Court of North Carolina noted when considering the 1975 change to the statute, "[t]he substantive features of the statute have remained unchanged since this rewrite." *Banks*, 370 S.E.2d at 407 (explaining what the State must prove under (a)(1) and (a)(2) to sustain a conviction under the indecent liberties statute).

The gist of this historical account is that the essential elements of the North Carolina indecent liberties statute *are today what they have always been. See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.") (cited in *United States v. Baxter*, 642 F.3d 475, 478 n.3 (4th Cir. 2011) (holding that, under the modified categorical approach to the ACCA, the Virginia Supreme Court's authoritative interpretation of the state burglary statute in 1985 applied to the defendant's 1976 burglary conviction, where the defendant was sentenced in federal court in 2010 for violation of 18 U.S.C. § 922(g)(1))).

Thus, the fundamental difficulty I perceive in Judge Keenan's effort lies in its promotion of the interchangeable use of the terms "elements [of the indecent liberties statute]," "behaviors," "acts," "means," and "theories."**⁴**

(Text continued on page 42)

---

**⁴**Contrary to the reading of *Hartness* advanced by Judge Keenan and Judge Niemeyer, to the extent that subsections (a)(1) and (a)(2) of the indecent liberties statute create either (1) an overarching, nongeneric offense having a subsumed generic offense (*a la Taylor* and *Shepard*) (Judge Keenan), or (2) two generic offenses (*a la Chambers* and *Johnson*) (Judge Niemeyer), subsequent cases in North Carolina demonstrate the

correctness of Judge King's reading of that case. The North Carolina Supreme Court's ambiguous reference to "alternative elements" in *Hartness* has been clearly elaborated:

> In our recent opinion in *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), this Court held that it was not error to instruct the jury disjunctively as to various *alternative acts*, either of which would establish an element of the offense charged. Although some of the jurors may find the defendant guilty based on their belief that the defendant committed act *A* and some may base their vote of guilty on the defendant's participation in act *B*, such alternative findings do not render the jury's verdict nonunanimous as long as the alternative acts found establish an element of the offense and do not, in and of themselves, constitute a separate offense . . . . As in *Hartness*, *the defendant in this case was convicted under a statute proscribing a single offense that may be established by a finding of any one of several alternative acts* . . . . Just as in *Hartness*, wherein we concluded that the offense of indecent liberties may be proved by several different acts, a violation of N.C.G.S. § 14-31 may be proved by showing an assault and battery upon one or more victims. In *Hartness*, we concluded that it was immaterial that the jurors may have differed as to which specific sexual act they believed the defendant to have committed as long as all of the jurors found that the defendant had committed a sexual act. We stated:
>
> > The risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive . . . . Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.
>
> *Hartness*, 326 N.C. at 564, 567, 391 S.E.2d at 179, 180 . . . . The *Hartness* reasoning applies equally well here.

*State v. Lyons*, 412 S.E.2d 308, 316-17 (N.C. 1991) (Meyer, J., dissenting) (emphases added); *see also State v. Almond*, 435 S.E.2d 91, 96 (N.C. 1993) ("In *Lyons*, Justice Whichard went on to stress the importance of examining the gravamen of the offense which the legislature intended to prevent. In *Lyons*, it was held that the 'gravamen of the offense of maliciously assaulting in a secret manner is the assaulting of a particular individual in that manner.' *Id.* at 307, 412 S.E.2d at 314. The gravamen of the

For me, the upshot is that it simply is not true that "the statute is composed of alternative elements" in the manner in which Judge Keenan (and Judge Niemeyer) insist; the elements are the five that the state courts say they are. For the reasons explained by Judge King, what is surely true is that proof of an offense proscribed by the statute can be sustained by evidence showing beyond a reasonable doubt that the defendant committed one or more "alternative acts," engaged in "alternative behaviors," or that the defendant violated the statute by "alternative means," any one or more of which might satisfy the *third element* of the statutory offense (i.e., that "he willfully took or attempted to take an indecent liberty with the victim"), but not one of which is *necessarily required to be* an act (or attempted act) "upon" or "with" "the body of," or "a part or a member of," a child, let alone a *forceful or violent act inevitably leading to the infliction of, or inherently posing a "risk of physical injury"* as required by the residual clause of the ACCA. One might also say that a prosecutor is authorized to proceed against a culpable defendant on "alternative theories," which one federal court appellant has argued could number as many as 16.[5]

(Text continued on page 44)

---

offense in *Hartness* was not the conduct of the defendant, but his intent or purpose. *Id.*").

Thus, the focus of *Hartness* was on the alternative *acts* or *means* by which a violation of the indecent liberties statute could be proven.

[5]In contrast to the actual holdings of the North Carolina courts, Judge Keenan would apparently identify 16 discrete offenses based on the "alternative elements" of the indecent liberties statute, apparently along the following lines:

  1) Did take immoral liberties for the purpose of arousing sexual desire;

  2) Did take improper liberties for the purpose of arousing sexual desire;

  3) Did take indecent liberties for the purpose of arousing sexual desire;

4) Did attempt to take immoral liberties for the purpose of arousing sexual desire;

5) Did attempt to take improper liberties for the purpose of arousing sexual desire;

6) Did attempt to take indecent liberties for the purpose of arousing sexual desire;

7) Did take immoral liberties for the purpose of gratifying sexual desire;

8) Did take improper liberties for the purpose of gratifying sexual desire;

9) Did take indecent liberties for the purpose of gratifying sexual desire;

10) Did attempt to take immoral liberties for the purpose of gratifying sexual desire;

11) Did attempt to take improper liberties for the purpose of gratifying sexual desire;

12) Did attempt to take indecent liberties for the purpose of gratifying sexual desire;

13) Did commit a lewd act upon the body of the child;

14) Did commit a lascivious act upon the body of the child;

15) Did attempt to commit a lewd act upon the body of the child; and

16) Did attempt to commit a lascivious act upon the body of the child.

Brief of Appellant at 15 n.5, *United States v. Ramirez-Garcia*, 646 F.3d 778 (11th Cir. 2011) (No. 10-13279-FF), 2010 WL 5622138 at *15 n.5 (describing the foregoing as 16 ways to violate one of the elements of the North Carolina indecent liberties statute).

It is not entirely clear which of the above 16 clusters of "alternative elements" are encompassed by Judge Keenan's "blank slate" approach, but presumably only convictions resting on clusters 13 and 14 would qualify. Thus, I would presume, even if a defendant pled guilty to a "subsection (a)(2) offense," it would be open to that defendant in a subsequent federal court prosecution to show, through application of the modified categorical

Notably, the very statutory terms which Judge Keenan identifies as "alternative elements" of the indecent liberties offense are elastic in the extreme. Specifically, as to Judge Keenan's suppositions regarding subsection (a)(2) of the indecent liberties statute, the supposedly discrete elements of "lewd" and "lascivious" harken back to the venerable legal redundancies of old, *see, e.g.*, "null and void," and "cease and desist," and provide scant reason to deviate from clear holdings of the state courts as to the "elements and character" of the indecent liberties statute and the clear command of our Supreme Court that we apply a categorical approach under the ACCA.

In fact, in construing the indecent liberties statute, at least one North Carolina appellate court has defined the word "lewd" "broadly" as, among other things, "lascivious." *State v. Manley*, 381 S.E.2d 900, 902 (N.C. Ct. App. 1989) (citing *Webster's Third New International Dictionary* at 1301 (1968)), *disc. review denied*, 388 S.E.2d 467 (N.C. 1989). Such circularity of meaning is not entirely surprising under the circumstances. Moreover, the trial judge has no duty under North Carolina law even to define the essential terms in the indecent liberties statute for the jury. *See State v. Stell*, 249 S.E.2d 480 (N.C. Ct. App. 1978); *State v. Jenkins*, 242 S.E.2d 505, 506-07 (N.C. Ct. App. 1978), *disc. review denied*, 246 S.E.2d 11 (1978); *State v. Withers*, 162 S.E.2d 638 (N.C. Ct. App. 1968). The kind of unguided jury factfinding fostered by historical practice under the North Carolina indecent

approach favored by my colleagues, that he in fact committed one of the other "categories" of offenses under the indecent liberties statute (i.e., one that did not pose a risk of physical injury), and therefore was ineligible for a sentence enhancement or an increase in his guidelines base offense level. *See post* at 52 n.1 (Op. of Keenan, J.).

These questions are left open by the en banc decision in this case, but surely my colleagues do not mean to suggest that the modified categorical approach applies only when it aids the government, but not when it aids the defendant.

liberties statute, an "all things to all people" approach to criminal adjudication, presents a poor candidate for application of the modified categorical approach under the residual clause of the ACCA.

For all these reasons, with sincere respect for Judge Keenan's effort, I am unconvinced that the case has been made for the application of the modified categorical approach here.

C.

Judge Niemeyer's dissenting opinion contends that the modified categorical approach applies but, unlike Judge Keenan's concurring opinion, it would find that "North Carolina's indecent liberties statute contains at least two separate generic offenses for ACCA purposes." *Post* at 66 (Op. of Niemeyer, J.). What has already been said regarding Judge Keenan's approach identifies the difficulties with Judge Niemeyer's approach. Furthermore, to say, as does the dissent, "whether Vann's guilty pleas establish that he was convicted of *the more violent* of the two offenses set forth in N.C. Gen. Stat. § 14-202.1, as stated in subsection (a)(2)," *post* at 72 (Op. of Niemeyer, J.) (emphasis added), is question-begging of the most regrettable sort. There is no Supreme Court authority for surgery on a state statute to discover which of two statutory subsections is the "*more violent*,"[6] when *that statute has been*

---

[6]I am uncertain, as were the dissenting justices in *Sykes*, precisely how the *Sykes* majority's "risk assessment" approach actually is likely to be employed in future cases. *See Sykes*, 131 S. Ct. at 2285 (Scalia, J., dissenting) ("But what about the test that determined the outcome in our second case in this "series"—the "purposeful, violent, and aggressive" test of *Begay*? Fear not. That incompatible variation has been neither overlooked nor renounced in today's tutti-frutti opinion."); *id.* at 2289 n.1 (Kagan, J., dissenting) ("I understand the majority to retain the 'purposeful, violent, and aggressive' test, but to conclude that it is 'redundant' in this case . . . . I assume this test will make a resurgence—that it will be declared non-redundant—the next time the Court considers a crime, whether intentional or not, that involves risk of injury but not aggression or violence.").

*authoritatively interpreted by the state supreme court as not having as an element a perpetrator's use of violence or force.* Indeed, our dissenting colleague actually identifies the very rule regarding the elements of the offense applied by Judge King. *See post* at 81 n.4 (Op. of Niemeyer, J.) (quoting *State v. Jones*, 616 S.E.2d 15, 20 (N.C. 1990), for the proposition that the statute "states disjunctively *two alternative means* of *proving one element* of the offense"). In any event, to the extent that the dissent equates a "lewd and lascivious act upon or with the body or any part or member of the body of any child" under the North Carolina indecent liberties statute with a "sexual act" or a "sexual assault," it plainly deviates from clear North Carolina law. *Manley*, 381 S.E.2d at 902 (observing that "a 'lewd or lascivious act' is not necessarily a 'sexual act'"). Resort to ostensible analogues of the North Carolina indecent liberties act from the Model Penal Code does not change this result. *See post* at 78-79 (Op. of Niemeyer, J.).

D.

Despite my good colleagues' heroic struggles to apply faithfully their understanding of the law in this difficult area, I find their efforts wanting. So far as I can discern, with perhaps one or two exceptions, every one of the more than 25 federal courts that have examined how the North Carolina indecent liberties statute should be assessed and applied in varying sentence enhancement contexts have applied the categorical approach, as does Judge King. *See supra* n.1; *see also*

---

In any event, it bears emphasis, as Judge King explains, *ante* at 19 (Op. of King, J.), that just as *Begay* involved a kind of strict liability statute, so too does the North Carolina indecent liberties statute sound in strict liability. That is to say, a good faith mistake as to the victim's age is not a defense to such a charge. *State v. Breathette*, 690 S.E.2d 1 (N.C. Ct. App. 2010). Although the statute is commonly understood to be a "specific intent" crime, requiring as it does that the purpose of the defendant's prohibited acts be for sexual gratification, there is nonetheless no *mens rea* requirement as to the element of the victim's age.

*United States v. Baza–Martinez*, 464 F.3d 1010 (9th Cir. 2006) (applying the categorical approach in an illegal reentry case and finding that violation of North Carolina's statute was not categorically a crime of violence under the child sexual abuse provision of U.S.S.G. § 2L1.2(b)(1)(A)(ii)); *United States v. Witsher*, 2011 WL 2261022 (W.D. Pa. June 8, 2011) (finding North Carolina indecent liberties conviction was not a "crime of violence" as "sexual abuse of a minor" under the "Career Offender" guideline, U.S.S.G. § 4B1.1). And, of course, we did likewise in our now superseded decision, *United States v. Pierce*, 278 F.3d 282 (4th Cir. 2002) (construing the "Career Offender" guideline, U.S.S.G. § 4B1.1).[7] I regret the en banc court's refusal to adopt the sound analysis reflected in those cases.

## II.

For all that one might say in critiquing the Supreme Court's "weav[ing of] intricate webs of doctrine" in its ACCA jurisprudence, *post* at 55 (Op. of Wilkinson, J.), one thing is certain: we are not to concern ourselves with the manner or means by which a generic crime was committed in a particular instance. *Ante* at 14 (Op. of King, J.) ("Like the categorical approach, however, the modified categorical approach does not authorize a sentencing court to use *Shepard*-approved documents to consider the particular acts underlying the previous conviction." (citing *Chambers*, 129 S. Ct. at 690)). In the case at bar, I fear that the proponents of the modified categorical approach fall into an easily avoidable trap by insisting that, despite the controlling state court precedents to the contrary, subsection (a)(2) of the indecent liberties statute can be

---

[7]The sole exception appears to be *United States v. Martinez-Vazquez*, 410 F. App'x 28, 30 (9th Cir. 2010) (stating that *Baza–Martinez* declined to apply modified categorical approach "only because" no *Shepard*-approved documents were in the record, and going on to apply the modified categorical approach to find that a North Carolina indecent liberties conviction supported an offense level increase under U.S.S.G. § 2L1.2).

disaggregated from the statute as a whole and treated as a separate offense characterized by the perpetrator's use of force against child victims in all its iterations, such that a "serious potential risk of physical injury" is inherent in their commission.

At the end of the day, it may well be that Justice Scalia is right: that the residual clause of the Armed Career Criminal Act is unconstitutionally vague.[8] This business of adjudicating "levels of risk" by "intuition" is problematic, to say the least. *See Chambers*, 129 S. Ct. at 692 ("[T]he study strongly supports the *intuitive belief* that failure to report does not involve a serious potential risk of physical injury." (emphasis added)); *Sykes*, 131 S. Ct. at 2291 (Kagan, J., dissenting) ("But the majority's *intuition* that dangerous flights outstrip mere failures to stop—that the aggravated form of the activity is also the ordinary form—seems consistent with common sense and experience." (emphasis added)).[9] But until Justice Scalia persuades at least four of his colleagues of the correctness of his view, we lower court judges owe fealty to the Supreme Court's teaching on how we are to implement Congress's less-than-crystal-clear design.

---

[8]*See Sykes*, 131 S. Ct. at 2287 (Scalia, J., dissenting):

> The Court's ever-evolving interpretation of the residual clause will keep defendants and judges guessing for years to come. The reality is that the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" does not clearly define the crimes that will subject defendants to the greatly increased ACCA penalties. It is not the job of this Court to impose a clarity which the text itself does not honestly contain. And even if that were our job, the further reality is that we have by now demonstrated our inability to accomplish the task.

[9]*See also United States v. Harrison*, 558 F.3d 1280, 1294-95 (11th Cir. 2009) ("In some crimes, such as armed robbery, rape, and arson, the serious potential risk of physical injury is obvious. But in lesser crimes, courts, without empirical evidence, are left to rely on their own *intuition* about whether certain kinds of behavior pose serious potential risks of physical injury.").

Judge King's analysis manifests that fealty and I am pleased to join his opinion.

KEENAN, Circuit Judge, concurring:

I concur in the per curiam opinion of the majority of the members of this Court. I write separately to explain why I conclude that we are permitted to use the "modified categorical approach" in determining whether Vann's indecent liberties convictions qualify as violent felonies within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the ACCA).

The offense of "taking indecent liberties with children," set forth in Section 14-202.1 of the North Carolina General Statutes (the indecent liberties statute), provides that:

> (a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
>> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
>>
>> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.
>
> (b) Taking indecent liberties with children is punishable as a Class F felony.

N.C. Gen. Stat. § 14-202.1.

As Judge King observes in his concurring opinion, North Carolina's appellate courts have construed the indecent liber-

ties statute as encompassing only one offense, rather than multiple offenses. *See ante* at 21 (discussing *State v. Hartness*, 391 S.E.2d 177 (N.C. 1990); *State v. Jones*, 616 S.E.2d 15 (N.C. Ct. App. 2005); *State v. Jones*, 393 S.E.2d 585 (N.C. Ct. App. 1990)). But this characterization of the statute as a single offense, without more, oversimplifies the Supreme Court of North Carolina's analysis in *Hartness*. The court in *Hartness* stated that, in the indecent liberties statute, the "single wrong is established by a finding of various *alternative* elements." 391 S.E.2d at 180 (emphasis added). Additionally, the court explained that the single offense proscribed by the statute "may be proved by evidence of the commission of any one of a number of acts." *Id.*

The *Hartness* analysis, explaining that the statute is composed of alternative elements, is supported by the plain language of the statute, which is cast throughout in the disjunctive. In addition to the two subsections of paragraph (a) that are stated in the disjunctive, each subsection contains more than one disjunctive reference, providing alternative elements that serve to establish the different statutory prohibitions comprising the single wrong recognized by North Carolina's highest court.

The task in determining whether Vann was convicted of a "violent felony," within the meaning of the ACCA, starts with consideration under the "categorical approach" of the fact of Vann's conviction and the alternative statutory elements of the offense. *See Taylor v. United States*, 495 U.S. 575, 599-602 (1990). Under this approach, a court considers only the various elements of the indecent liberties offense, not the facts leading to Vann's conviction under that statute. *See Chambers v. United States*, 555 U.S. 122, 125 (2009). I agree with Judge King's conclusion that, in employing the categorical approach in this case, the government cannot establish that any of Vann's previous convictions were for a "violent felony."

I disagree, however, with Judge King's conclusion that we may not employ the modified categorical approach in analyz-

ing Vann's prior convictions. Although Judge King correctly states that principles of federalism require us to apply the North Carolina courts' construction of the indecent liberties statute as being composed of a "single offense," this statement is incomplete. Here, principles of federalism require that we conduct our ACCA analysis within the structural context of a statute that is composed of a single offense, but has been recognized by North Carolina's highest court as having alternative elements describing different behaviors constituting an offense under the statute. These alternative elements are found in both subsections of paragraph (a) of the statute.

In determining whether this statutory framework of alternative elements permits us to employ the modified categorical approach in consideration of Vann's prior convictions, the Supreme Court's decision in *Chambers* provides helpful guidance. There, the Supreme Court discussed a Massachusetts statute at issue in an earlier case, *Shepard v. United States*, which contained alternative elements placing "within a single, separately numbered statutory section entitled 'Breaking and entering at night,' burglary of a 'building, ship, vessel or vehicle.'" *Chambers*, 555 U.S. 122, 126 (2009) (discussing *Shepard*, 544 U.S. 13, 16-17 (2005)) (citation omitted). The Supreme Court explained in *Chambers* that although the various proscribed behaviors were located within a single section of the Massachusetts statute, the different natures of the behaviors were the determinative factor in analyzing whether the statute encompassed more than one crime for purposes of the ACCA. *Id.* Thus, the Court stated that because "the behavior underlying, say, breaking into a building differs so significantly from the behavior underlying, say, breaking into a vehicle[,] that *for ACCA purposes* a sentencing court must treat the two as different crimes." *Id.* (emphasis added).

The ultimate holding of *Chambers* involved the Court's consideration of an Illinois statute that proscribed the different behaviors of failing to report for periodic imprisonment and of intentionally escaping from a penal institution. The

Supreme Court concluded that the statute stated distinct criminal acts constituting two crimes for purposes of the ACCA. *Id.* at 126-27.

The above discussion in *Chambers*, and its ultimate holding, reflect the fact that an essential function of the ACCA analysis is to determine, subject to constitutional restrictions, which proscribed criminal behavior in a disjunctively-worded statute formed the basis of a defendant's conviction. This part of the ACCA analysis is rooted in identifying the acts proscribed by the various statutory elements, and does not depend on whether those behaviors are listed in one or several different sections of a particular statute.[1] Thus, if a statute alternatively proscribes different acts that essentially constitute different crimes, only some of which would qualify as a "violent felony" within the meaning of the ACCA, the "modified categorical" approach may be employed to help a sentencing court identify the correct category of proscribed behavior of which the defendant was convicted. *See Chambers*, 555 U.S. at 126-27; *Taylor*, 495 U.S. at 602.

Upon examination of the indecent liberties statute and its alternative elements, it is apparent that the proscriptions of the statute, like the various behavioral proscriptions in the statutes discussed in *Chambers*, encompass behaviors that differ so significantly that they constitute conceptually distinct crimes for purposes of applying the ACCA. For example, under the indecent liberties statute, an adult's act of taking an "improper," as distinct from an "immoral" or "indecent," liberty with a child "for the purpose of arousing or gratifying sexual desire" constitutes a violation of the indecent liberties statute under the first subsection of paragraph (a) of the statute. N.C.

---

[1]I disagree with Judge King's conclusion that the indecent liberties statute as a whole, including both subsection (a)(1) and subsection (a)(2), sets forth five fixed elements. In my view, this conclusion cannot be reconciled with the analysis of the highest court of North Carolina in *Hartness* that the statute is composed of alternative elements. *See* 391 S.E.2d at 180.

Gen. Stat. § 14-202.1(a)(1). Conversely, under a portion of the second subsection of paragraph (a), the statute is violated by an adult's act of committing a lewd or lascivious act upon "any part or member of the body of the child." N.C. Gen. Stat. § 14-202.1(a)(2).

In accordance with the *Chambers* analysis, although both proscribed behaviors would be statutory violations under alternative elements stated in the statute, the radically distinct natures of the above two proscribed acts require that they be treated as different crimes for ACCA purposes. The elements of the first violation identified above reference statutorily-proscribed behavior that is merely "improper" and, thus, is non-violent. By contrast, the elements of the second violation identified above proscribe acts that under the ACCA would be considered violent in nature.[2] In such situations, use of the modified categorical approach is appropriate to analyze the different behaviors proscribed by the statute to determine which statutory elements formed the basis of the defendant's conviction. *See Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010). Thus, because the indecent liberties statute encompasses behaviors so radically different that the single statutory offense covers conceptually different crimes for

---

[2]In my view, a violation of subsection (a)(2) of the indecent liberties statute, "in the ordinary case," *United States v. James*, 550 U.S. 192, 208 (2007), carries the requisite "degree of risk" comparable to the enumerated crimes in 18 U.S.C. § 924(e)(2)(B)(ii). *See Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011). Under subsection (a)(2) of the North Carolina statute, as discussed, the indecent act must be committed "upon or with the body or any part or member of the body" of the minor. N.C. Gen. Stat. § 14-202.1(a)(2). Just as the "risk of violence is inherent to vehicle flight," *Sykes*, 131 S. Ct. at 2273, so too the risk of violence is inherent in an adult's commission of a "lewd or lascivious act" "upon or with the body or any part or member of the body" of the minor victim. *Id.*; *see also Sykes*, 131 S. Ct. at 2273 (observing that vehicle flight, like burglary, is dangerous because it can end in confrontation leading to violence). Thus, a violation of subsection (a)(2) of the indecent liberties statute ordinarily "presents a serious potential risk of physical injury to another" within the meaning of the ACCA's residual clause. *See* 18 U.S.C. § 924(e)(2)(B)(ii).

ACCA purposes, I conclude that Vann's convictions may be examined under the modified categorical approach approved by the Supreme Court. *See Chambers*, 555 U.S. at 126.

This conclusion is not altered by the fact that North Carolina's courts have held that the same conduct may be prosecuted under different alternative elements of the statute. The issue whether we may apply the modified categorical approach under the ACCA depends on an examination of the different criminal elements of a statute and on the stated behaviors that these elements proscribe, not on any particular conduct that may be encompassed by a given statutory proscription. *See Johnson*, 130 S. Ct. at 1273; *Chambers*, 555 U.S. at 125-27.

As the above discussion illustrates, the single offense of indecent liberties, as set forth in the North Carolina statute, can qualify as a "violent felony" under the ACCA, depending on which of the statute's alternative elements are satisfied in a particular case. Therefore, in my view, we must consider whether the *Shepard*-approved documents in Vann's case establish which of the conceptually different crimes Vann committed. Only if those documents yield a clear answer to this question may we proceed to the next step to determine whether the crime for which Vann was convicted was a "violent felony," within the meaning of the ACCA. *See Shepard*, 544 U.S. at 24-26; *Taylor*, 494 U.S. at 602.

For the reasons stated in the per curiam opinion of the en banc majority, I conclude that, upon examining the applicable *Shepard*-approved documents under the modified categorical approach, the government cannot satisfy its burden of establishing the distinct statutory proscription of the indecent liberties statute underlying Vann's convictions. Therefore, I conclude that we are not permitted to consider further whether Vann was previously convicted of a violent felony under the ACCA. Accordingly, I concur in the judgment of the Court vacating Vann's sentence and remanding the case to the dis-

trict court for further proceedings. I am pleased to state that Chief Judge Traxler, Judge Agee, Judge Wynn, and Judge Diaz join in this opinion.

WILKINSON, Circuit Judge, concurring in the judgment:

The North Carolina indecent liberties statute is singularly broad and the *Shepard*-approved documents are singularly unedifying. For these reasons and in these narrow circumstances, I cannot find the three predicate crimes of violence necessary to support an Armed Career Criminal Act ("ACCA") enhancement. Because I believe too many courts are too deep in the weeds on the matter of the ACCA's residual clause, I reluctantly feel required to write separately.

I appreciate very much the conscientious attention of my colleagues to this case. The profusion of opinions here, however, illustrates the obvious difficulties that courts are experiencing in applying the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii). Whether this is due to the fondness of Congress for vague formulations or the propensity of judges to weave intricate webs of doctrine, I do not know. Whatever the reason, when an inquiry becomes overly complex, the best course is to repair to simplicity, which in this case is the congressional intent underlying the ACCA.

It cannot have been the intent of Congress to categorically sweep up all sorts of non-violent indecent liberties offenses as predicate ACCA crimes. Neither, however, can it possibly have been the intent of Congress to categorically exclude as predicates those crimes where minors were victimized by violent sexual assaults. For the reasons that follow, I believe the court has no choice but to adopt in this case a modified categorical approach.

I.

As its name implies, the ACCA sought to punish particular types of crimes -– serious drug offenses and violent felonies. Congress could have attached the ACCA enhancement to a larger universe of felonies or indeed to all felonies, but it did not do so. Instead, it addressed violent felonies, and the inclusion of that conduct necessarily means the exclusion of some other. *See* H.R. Rep. No. 98-1073, at 3 (1985), *reprinted in* 1984 U.S.C.C.A.N. 3661, 3662 ("Having established this need [to enhance sentences for repeat offenders] generally, the question then remained for the Committee to determine what particular segment of the career criminal population the Federal Government should target.").[1]

II.

In this case, somewhat unusually, Vann's alleged ACCA predicates all involved violations of the same indecent liberties statute. That statute, N.C. Gen. Stat. § 14-202.1, is staggeringly broad, making it more difficult to determine whether "[s]erious and substantial risks" of physical injury akin to those presented by the enumerated crimes "are an inherent part" of a typical offense. *Sykes v. United States*, 131 S. Ct. 2267, 2276 (2011).

Nor does parsing the statute into separate offenses under subsections 14-202.1(a)(1) and 14-202.1(a)(2) help much -– both are written in such sweeping terms as to confound a categorical analysis of the risk presented by the "typical" violation. Section (a)(1) criminalizes "immoral, improper, or

---

[1]It bears note that the status of Vann's convictions as qualifying ACCA predicates is all that is at issue here. The validity of those convictions is not in question, nor could that validity be drawn into doubt in this federal sentencing proceeding. *See Johnson v. United States*, 544 U.S. 295 (2005); *Daniels v. United States*, 532 U.S. 374 (2001); *Custis v. United States*, 511 U.S. 485 (1994).

indecent liberties," but those terms are so imprecise as to offer virtually no guidance as to what conduct is an inherent part of a § 14-202.1(a)(1) violation. *See State v. Lawrence*, 612 S.E.2d 678, 687 (N.C. Ct. App. 2005) ("While some action on the part of the defendant is necessary, what acts are immoral, improper, or indecent is not statutorily defined.")

Section (a)(2) is not much better. For example, it repeatedly uses the term "any," reaching "*any* lewd or lascivious act upon or with the body or *any* part or member of the body of *any* child." N.C. Gen. Stat. § 14-202.1(a)(2) (emphasis added). It is well-accepted that this is a broadening term, but although a "catchall the phrase surely is; . . . to say this is not to define what it catches." *Flora v. United States*, 362 U.S. 145, 149 (1960) (discussing the meaning of "any sum"). Nor do the precise terms of the statute narrow its scope: courts in North Carolina have adopted dictionary definitions of "lewd" –- meaning "inciting to sensual desire or imagination" –- and "lascivious" -– meaning "tending to arouse sexual desire." *See, e.g.*, *State v. Hammett*, 642 S.E.2d 454, 458 (N.C. Ct. App. 2007).

Thus, in addition to the repeated use of the word "any," the many adjectives in the statute are both fuzzy and expansive, encompassing a spectrum of acts from the immensely serious to the more innocuous. The extraordinary breadth of § 14-202.1 is by design: "the legislature enacted [it] to encompass more types of [wrongful] behavior, giving children broader protection than available under other statutes proscribing sexual acts." *State v. Etheridge*, 352 S.E.2d 673, 682 (N.C. 1987). The statute has achieved this remarkable scope by making the "[d]efendant's purpose for committing such act . . . the gravamen of this offense; the particular act performed is immaterial." *State v. Hartness*, 391 S.E.2d 177, 180 (N.C. 1990). We may not, however, take such a shortcut in our ACCA analysis; we must determine whether an indecent liberties offense "involves conduct" –- the particular act performed in committing a generic violation of the statute -– that

poses a risk comparable to that presented by any of the enumerated ACCA predicates.

It bears note that not only does the breadth of the statute complicate our task of determining what is a typical indecent liberties offense, but it also stands in sharp contrast to the notably specific elements of the crimes ACCA does list. For example, the Supreme Court has held that "burglary" necessarily "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). Similarly, the federal Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force." 18 U.S.C. § 1951(b)(2) (2006). These precise formulations diverge remarkably from the criminalization in § 14-202.1(a)(2) of virtually any act done with a prurient intent either in or out of the presence of a minor. The indecent liberties offense also differs substantially from other prohibitions on sexual abuse (and more likely candidates for categorical treatment) in the North Carolina General Statutes, such as N.C. Gen. Stat. § 14-27.5A(a),[2] which provides that:

> (a) A person is guilty of sexual battery if the person, for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person:
>
> (1) By force and against the will of the other person; or
>
> (2) Who is mentally disabled, mentally incapaci-

---

[2]This statute provides for punishment as a Class A1 misdemeanor. It is of course up to the North Carolina legislature how it chooses to categorize its offenses -– another state could just as easily classify this crime as a felony. *Compare* N.C. Gen. Stat. §14-27.5A(a), *with* Vt. Stat. Ann. tit. 13, § 3252(a).

tated, or physically helpless, and the person perform-
ing the act knows or should reasonably know that the
other person is mentally disabled, mentally incapaci-
tated, or physically helpless.

Significantly, this statute incorporates a highly specific def-
inition of "sexual contact" -– "(i) touching the sexual organ,
anus, breast, groin, or buttocks of any person, (ii) a person
touching another person with their own sexual organ, anus,
breast, groin, or buttocks, or (iii) a person ejaculating, emit-
ting, or placing semen, urine, or feces upon any part of
another person." N.C. Gen. Stat. § 14-27.1.5.

It is these sort of specific requirements that enable us to say
with some certainty of a crime that the standard offense car-
ries a serious risk of physical injury to another or "can end in
confrontation leading to violence." *Sykes*, 131 S. Ct. at 2269.
Thus, the categorical approach will be the one courts most
frequently utilize. But in this case, we are left with a broad
statute that North Carolina courts have described virtually tau-
tologically. *See, e.g.*, *State v. McClees*, 424 S.E.2d 687, 690
(N.C. Ct. App. 1993) ("Indecent liberties are defined as such
liberties as the common sense of society would regard as
indecent and improper." (internal quotation marks omitted)
(quoting *Black's Law Dictionary* (6th ed. 1991))); *cf. Osborne
v. Ohio*, 495 U.S. 103, 135-36 (1990) ("At common law, the
term 'lewd' included any gross indecency so notorious as to
tend to corrupt community morals, an approach that was sub-
jective and dependent entirely on a speaker's social, moral,
and cultural bias." (internal quotation marks and citations
omitted)).

I simply cannot say that a typical violation of the indecent
liberties statute necessarily entails a risk of physical injury
when the statute does so little to define the conduct necessary
to commit a violation. I have no doubt that many of the
crimes punished under § 14-202.1 are repugnant, and many
may be emotionally traumatizing for the young victims -–

North Carolina does well to punish such conduct. But vile conduct is not necessarily violent conduct, and psychological injury alone, though no less real than the physical injury required by the statute, is not an adequate basis for an ACCA predicate. *See Johnson v. United States*, 130 S. Ct. 1265, 1270 (2010) ("The adjective 'physical' . . . plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force.") It is an emotionally tempting but legally unacceptable use of the ACCA's residual clause to draw within it any criminal conduct that we as judges understandably deplore and truly do not like.

"Congress chose to frame ACCA in general and qualitative, rather than encyclopedic, terms," *Sykes*, 131 S. Ct. at 2277, but the quality ACCA predicates share is an unacceptable risk of *physical* injury arising in the usual course. Although *Sykes* clarifies that the risk of physical harm need not necessarily arise from "purposeful, violent, and aggressive" conduct to qualify as an ACCA predicate, *id.* at 2275 (quoting *Begay*, 553 U.S. at 145), it reaffirmed the statutory requirement that the risk posed be physical. In *Sykes*, there was no need to differentiate types of risk; "an inherent part of the offense" of vehicular flight from law enforcement is a "lack of concern for the safety of property and persons of pedestrians and other drivers." *Id.* at 2269. But the breadth of the indecent liberties statute includes forms of risk that, while terrible, fall outside the statute. *See State v. Breathette*, 690 S.E.2d 1, 5-6 (N.C. Ct. App. 2010) ("Undoubtedly [N.C. Gen. Stat. § 14-202.1's] breadth is in recognition of the significantly greater risk of psychological damage to an impressionable child from overt sexual acts." (quoting *State v. Banks*, 370 S.E.2d 398, 407 (N.C. 1988) (alteration in original))).

In sum, I cannot see how an indecent liberties offense under either prong of the North Carolina statute can categorically be deemed an ACCA predicate crime of violence. I further conclude, as the Supreme Court has instructed, that when

a statute is too broad to categorically serve as an ACCA predicate, the proper approach is not to throw up our hands and abandon the purpose of the statute, but rather to proceed with the modified categorical approach.

## III.

To say that North Carolina's indecent liberties statute is so broad as to preclude categorical classification is thus only a first step. It does not mean that a violation of § 14-202.1 can never be an ACCA predicate under the residual clause. In dealing with statutes such as this one, the Supreme Court has approved the use of the "modified categorical approach," using charging documents, plea colloquys, jury instructions, and other "conclusive court documents," to assess whether a defendant was in fact convicted of a crime that in its generic form would be an ACCA predicate. *See Shepard v. United States*, 544 U.S. 13, 26 (2005); *Taylor*, 495 U.S. at 599-600. Such analysis is appropriate when "the behavior underlying, say, breaking into a building differs so significantly from the behavior underlying, say, breaking into a vehicle that for ACCA purposes a sentencing court must treat the two as different crimes." *Chambers v. United States*, 129 S. Ct. 687, 690 (2009). Of course, whether a statute is susceptible to modified categorical analysis under the ACCA is a federal question, but one whose answer is often informed by analysis not only of the statute itself but of accompanying state decisional law.

Here, the modified categorical approach should apply. Under the North Carolina statute, it is clearly possible for defendants to be convicted for various forms of conduct that would constitute "different crimes," some of which would generically be ACCA predicates. Some defendants have been charged under § 14-202.1 with conduct amounting to statutory rape, *see, e.g.*, *State v. McLean*, 580 S.E.2d 431 (N.C. Ct. App. 2003), which we have previously held not to serve as an ACCA predicate in *United States v. Thornton*, 554 F.3d 443

(4th Cir. 2009). Other defendants have been convicted of more serious forms of sexual assault, *see, e.g.*, *State v. Askew*, 643 S.E.2d 678 (N.C. Ct. App. 2007), akin to that proscribed by the Vermont statute that the Second Circuit held qualified as an ACCA predicate in *United States v. Daye*, 571 F.3d 225 (2d Cir. 2009) (addressing statute that defined sexual assault as any "contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." *Id.* at 230 (quoting Vt. Stat. Ann. tit. 13, § 3251(1)).).

Here, however, the *Shepard* documents -– a 1991 indictment and a 1998 information -– do no more than parrot back the wide-ranging words of the North Carolina statute itself, and so do not describe "[t]he nature of the behavior that likely underlies [the] statutory phrase." *Chambers*, 129 S. Ct. at 690. As a result, the modified categorical approach in this case is no more illuminating than the categorical one, and we are left with the bare words of a statute that is written about as broadly as it possibly could be. Given the pattern of misconduct here, I suspect the defendant committed qualifying violations, but suspicions are insufficient, and the record, like the proverbial cupboard, is too bare.[3]

Thus, even though application of the modified categorical approach is appropriate, it yields no victory for the government here. My dear friend Judge King's concurring opinion— which I hereinafter refer to as "the concurrence"—goes further, however, and declares that modified categorical analysis is not suitable. The concurrence insists on rejecting the government's contention that the modified categorical approach is implicated here, *ante* at 20, and reiterates that "the modified

---

[3]Because the per curiam opinion's holding is ultimately premised on this conclusion, I believe the discussion of Vann's guilty pleas, *ante* at 8-10, is unnecessary to the disposition of the case.

categorical approach cannot apply to Vann's situation," *ante* at 24. With the greatest respect, I think that the categorical approach of the concurrence would have the unintended effect of visiting serious harms on children.

This categorical approach also strips the North Carolina statute of all effect. While I agree that for purposes of predictability and conserving trial court resources, the categorical approach is to be preferred, a respect for the efforts of the legislative branch may require that we recognize through a modified approach those instances of violent conduct that a statute seeks to reach. A different case might come out differently; a more specific set of *Shepard* charging documents could reveal "whether the plea had necessarily rested on" the sort of sexual assault that generally presents a serious potential risk of physical injury. *Shepard*, 544 U.S. at 21. I cannot understand how the concurrence can properly note the breadth of the statute and fail to recognize that it is that very breadth that makes further inquiry under the strict *Shepard* standards appropriate.

The concurrence suggests that my differences must be with "the governmental bodies that created the controlling legal principles." *Ante* at 28 n9. Judge Davis similarly charges that I have "confuse[d] the important law-making tasks committed by our constitutional structure to the legislature of North Carolina . . . with the adjudicative tasks committed to federal judges." *Ante* at 35 (Op. of Davis, J.). But I have no quarrel with either of these two duly enacted and presumptively valid statutes. My reservations have to do with the fact that ruling all indecent liberties offenses non-violent gives neither the state nor the federal statute any real effect. A state has every expectation that its convictions will be properly treated and respected under federal law, and this is no less true of North Carolina's efforts here to protect the most vulnerable members of our society. The concurrence repeatedly invokes principles of federalism, but its refusal to recognize any role here for the North Carolina statute is the very antithesis of what

dual sovereignty is about. Under the concurrence's ACCA analysis, even the most savage sexual assault against even the youngest child counts for nothing—nothing—just because it was prosecuted as a violation of § 14-202.1. I do not understand why this is so.

The categorical approach, as described by the concurrence, immunizes from the ACCA's reach a wide range of violent crimes that, although punished under this broad statute, could undoubtedly serve as ACCA predicates in their generic form. If, for example, a federal district judge was persuaded by a charge or plea colloquy that a young child had been bruised and beaten in the course of sexual aggression, how can that act not generically implicate ACCA? *See, e.g.*, Model Penal Code § 213.2 (2001) (Deviate Sexual Intercourse by Force or Imposition).[4]

---

[4]The concurrence considers it dispositive that "North Carolina precedent demonstrates that the essential elements of [§ 14-202.1 and parallel provisions of the Model Penal Code] are materially dissimilar." *Ante* at 26. Judge Davis posits that the modified categorical approach is unacceptable here because the North Carolina courts have not required an act of violence as an element of an indecent liberties offense. *Ante* at 42 (Op. of Davis, J.). Both of these statements misapprehend the whole purpose of the modified categorical approach, which applies in instances, such as this one, where the statutory definition of the crime is broader than the generic definition. *See Taylor*, 495 U.S. at 600 ("A few States' burglary statutes, however, . . . define burglary more broadly, *e.g.*, by eliminating the requirement that the entry be unlawful . . . . We therefore must address the question whether, in the case of a defendant who has been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary.")

It is thus irrelevant to the modified categorical approach that the North Carolina statute does not perfectly track the elements of generic sexual assault; the proper course under those circumstances is "to determine whether a plea of guilty to [a crime] defined by a nongeneric statute necessarily admitted elements of the generic offense" by reference to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26.

IV.

Congress wanted violent crimes to count as predicates under the ACCA and non-violent crimes not to count. A modified categorical approach here best honors its intent. Hewing to categorical absolutes will have the most serious effects. Ruling indecent liberties offenses categorically non-violent will allow brutal acts committed against children under a state statute designed to protect them to escape recognition under ACCA, eviscerating all the while the reach of a federal statute that is itself designed to protect citizens from just such depredations. Conversely, ruling indecent liberties violations categorically to be ACCA predicates will impermissibly sweep up who knows what prurient, but non-violent, acts. I fear we are so ensnared by our doctrine (federal or state question, single or dual offense, conjunctive or disjunctive charges, etc.) that we forget both those whom Congress and the state of North Carolina are attempting to protect and the nature of the acts from which law is trying to shield them. There is a way to safeguard defendants from the breadth of this enactment, to require that the evidence as to them meet strict *Shepard* standards, and still to preserve some place for children as special wards of the law and state. Because the modified categorical approach herein applied best captures each of these three aims, I am happy to concur in the judgment.

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

This case presents the question whether Torrell Vann's sentence for possessing a firearm in violation of 18 U.S.C. § 922(g) was properly enhanced under ACCA for his three previous convictions under the North Carolina indecent liberties statute, N.C. Gen. Stat. § 14-202.1. More specifically, we must determine whether each of Vann's three previous convictions constitutes a "violent felony," as that term is used in 18 U.S.C. § 924(e)(2).

The district court concluded that Vann's three previous convictions under the North Carolina indecent liberties statute constituted violent felonies and accordingly sentenced him to a statutory minimum sentence of 15-years' imprisonment. I would affirm the district court's sentence.

Because North Carolina's indecent liberties statute contains at least two separate generic offenses for ACCA purposes, it is appropriate, as the majority of this court concludes, to employ the modified categorical approach articulated in *Taylor v. United States*, 495 U.S. 575, 602 (1990), to determine whether the offenses used to enhance Vann's sentence were "violent felonies." Under the modified categorical approach, I would conclude (1) that each of Vann's three previous convictions necessarily encompassed both of the offenses set forth in N.C. Gen. Stat. § 14-202.1, given the conjunctive wording of the charging documents and Vann's unqualified guilty pleas to the charges so stated; and (2) that the latter of the two offenses in § 14-202.1—"[w]illfully commit[ing] or attempt[ing] to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years"—was properly classified as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii), applying the analysis prescribed by the Supreme Court in its recent decision in *Sykes v. United States*, 131 S. Ct. 2267 (2011).

A majority of the judges of this court conclude that even though the modified categorical approach may be applied in determining whether Vann's previous convictions were for violent felonies, the *Shepard*-approved documents before the district court were not sufficient to determine whether Vann's previous convictions qualified as violent felonies for ACCA purposes. In supporting this holding, Judge Keenan's opinion, in which four judges concur, concludes that subsection (a)(1) of N.C. Gen. Stat. § 14-202.1 "reference[s] statutorily-proscribed behavior that is merely 'improper' and, thus, is non-violent. By contrast, the elements of [subsection (a)(2)]

proscribe acts that under the ACCA would be considered violent in nature," citing *Sykes*. *Ante*, at 53-54, 53 n.2. Judge Wilkinson appears to agree more generally that "it is clearly possible for defendants to be convicted for various forms of conduct that would constitute 'different crimes' [under the indecent liberties statute], some of which would generically be ACCA predicates." *Ante*, at 67.

Judge King's opinion, in which three judges concur, concludes, however, that even if it were determined that Vann willfully committed or attempted to commit a lewd of lascivious act upon the body of a child, in violation of N.C. Gen. Stat. § 14-202.1(a)(2), the crime would not constitute a "violent felony" for ACCA purposes. In reaching this conclusion, Judge King's opinion fails to conduct the *Sykes* analysis, simply concluding *ipse dixit* that Vann's crimes did not place his victims at serious potential risk of injury. *See ante*, at 19-20. Instead of conducting the *Sykes* analysis, he applies an irrelevant and discarded standard that, he suggests, requires that the crime, in order to be a violent felony, involve "physical contact" or a "touching" or perhaps even purposeful, violent, and aggressive conduct. *Ante*, at 18, 20, 21-22, 26.

Because I conclude that we can determine that Vann's guilty pleas included pleas to the generic crime encompassed in "willfully committing or attempting to commit a lewd or lascivious act upon or with the body" of a child, as prohibited in § 14-202.1(a)(2), I reach the question of whether these previous convictions were violent felonies under ACCA and conclude, as the majority concludes, that they were violent felonies.

Accordingly, I concur in those portions of the judgment holding that the modified categorical approach may be used in this case[1] and concluding that a violation of N.C. Gen. Stat.

---

[1]This portion of the judgment is joined by eight judges (Chief Judge Traxler and Judges Wilkinson, Niemeyer, Shedd, Agee, Keenan, Wynn and Diaz).

§ 14-202.1(a)(2) constitutes a violent felony under ACCA,[2] and I dissent from the judgment insofar as it holds that the *Shepard*-approved documents in this case do not justify a determination that Vann pleaded guilty to violations of subsection (a)(2) of the statute.

I

In the early morning hours of January 20, 2008, officers in Lumberton, North Carolina, responded to a 911 call from Torrell Vann's ex-girlfriend, who complained that Vann was insisting that he be let inside her house. By the time officers arrived, however, Vann had left. About an hour later, Vann returned and entered the ex-girlfriend's house through an unlocked back door. When the ex-girlfriend asked him to leave, Vann pulled out a pistol, put it to his head, and threatened to kill himself if she would not talk to him. Although Vann put the weapon away when the ex-girlfriend became upset and eventually left the residence, the ex-girlfriend again called the police. A short time later, officers stopped Vann's vehicle, finding that his speech was slurred, his license had been suspended, and he was in possession of a Bersa .380 pistol and ammunition.

Vann was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the indictment included the allegation that he had three previous con-

---

[2]This portion of the judgment is joined by seven judges (Chief Judge Traxler and Judges Niemeyer, Shedd, Agee, Keenan, Wynn, and Diaz). In her opinion, representing five judges, Judge Keenan concludes that a violation of N.C. Gen. Stat. § 14-202.1(a)(2) is a violent felony, stating, "a violation of subsection (a)(2) of the indecent liberties statute ordinarily 'presents a serious potential risk of physical injury to another' within the meaning of the ACCA's residual clause. *See* 18 U.S.C. § 924(e)(2)(B)(ii)." *Ante*, at 53 n.2. Thus, because I, with the concurrence of Judge Shedd, reach the same conclusion, seven judges (a majority of the twelve sitting on this case) conclude that a violation of subsection (a)(2) would constitute a violent felony for purposes of ACCA.

victions for "violent felonies," as defined in 18 U.S.C. § 924(e)(2)(B). Vann pleaded guilty to the charge pursuant to a written plea agreement.

Vann's presentence report described his extensive criminal history, including three prior convictions for taking indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1. The statute provides:

> (a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
>> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
>>
>> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.
>
> (b) Taking indecent liberties with children is punishable as a Class F felony.

The probation officer concluded that Vann's indecent liberties convictions were "violent felonies," and thus classified Vann as an armed career criminal under ACCA, subjecting Vann to a Sentencing Guidelines range of 180 to 210 months' imprisonment and a mandatory minimum sentence of 180 months' imprisonment.

At sentencing, Vann objected to the probation officer's application of the ACCA enhancement, arguing that his inde-

cent liberties convictions were not violent felonies under *Begay v. United States*, 553 U.S. 137 (2008), and *United States v. Thornton*, 554 F.3d 443 (4th Cir. 2009) (holding that Virginia's statutory rape offense is not a violent felony under ACCA). The government, in contrast, argued that the matter was controlled by *United States v. Pierce*, 278 F.3d 282 (4th Cir. 2002), which held that a violation of N.C. Gen. Stat. § 14-202.1 is a "crime of violence" for purposes of the Sentencing Guidelines' career offender enhancement, U.S.S.G. §§ 4B1.1, 4B1.2(a). The district court overruled Vann's objection, held that Vann was an armed career criminal under ACCA, and sentenced him to 180 months' imprisonment. This appeal followed.

## II

A violation of 18 U.S.C. § 922(g) ordinarily carries a maximum sentence of 10 years' imprisonment. 18 U.S.C. § 924(a)(2). But ACCA provides a sentencing enhancement based on the defendant's criminal history, providing that a person who violates § 922(g) and has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" must be sentenced to at least 15 years' imprisonment. *Id.* § 924(e)(1). The Act defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

*Id.* § 924(e)(2)(B).

The government contends that Vann's three indecent liberties convictions qualify as "violent felonies" under the final, or "residual" clause in subparagraph (ii) of § 924(e)(2)(B), which qualifies crimes that "present[ ] a serious potential risk of physical injury to another" as "violent felonies." To reach this conclusion, it makes three points.

First, the government asserts that N.C. Gen. Stat. § 14-202.1 contains two distinct offenses for ACCA purposes, one set forth in subsection (a)(1) and the other in subsection (a)(2), such that the "modified categorical approach" is appropriate to determine which of the offenses formed the basis for Vann's prior convictions. *See Chambers v. United States*, 555 U.S. 122, 126 (2009) (applying the modified categorical approach to a statute which "place[d] together in a single numbered statutory section several different kinds of behavior"). Second, it maintains that Vann was convicted of committing both offenses contained in the indecent liberties statute because he pleaded guilty to charging documents which alleged that he had violated subsection (a)(1) *and* subsection (a)(2). *See Shepard v. United States*, 544 U.S. 13, 25 (2005) (plurality opinion) (indicating that the nature of a prior conviction may be determined by "the defendant's own admissions"). And third, it claims that the offense described in subsection (a)(2), "[w]illfully commit[ting] or attempt[ing] to commit any lewd or lascivious act upon or with the body . . . of any child . . . under the age of 16 years," qualifies as a "violent felony" because it ordinarily involves the degree of risk required by the residual clause and the Supreme Court's decisions interpreting that clause. *See* 18 U.S.C. § 924(e)(2)(B)(ii); *Sykes v. United States*, 131 S. Ct. 2267 (2011); *James v. United States*, 550 U.S. 192 (2007).

Vann contests all three of these points. He argues that the modified categorical approach is inapplicable because the North Carolina courts have construed the indecent liberties statute as containing "a single offense." *State v. Hartness*, 391 S.E.2d 177, 180 (N.C. 1990); *see State v. Jones*, 616 S.E.2d

15, 20 (N.C. Ct. App. 2005). He maintains that these state court decisions are binding upon us, such that we must evaluate the indecent liberties statute as a whole, using the more traditional "categorical approach." He claims that under that approach, his convictions cannot qualify as violent felonies because the indecent liberties statute's two subsections, taken together, cover a broad range of conduct, some of which is not "purposeful, violent, and aggressive." *Begay*, 553 U.S. at 143-44; *see State v. Etheridge*, 352 S.E.2d 673, 682 (N.C. 1987) (stating that the indecent liberties statute is intended to cover a broad range of behavior).

Vann insists that the result remains the same if the modified categorical approach does apply, either because the records of his prior convictions are not properly before the court, thus leaving us without any basis upon which to conclude that he was convicted of the more violent subsection (a)(2) offense; or because his guilty pleas, like a jury verdict, could not establish which alternative statutory element formed the basis for his convictions. *See Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082-83 & n.3 (9th Cir. 2007).

Finally, Vann contends that even if both of the issues described above are resolved in the government's favor, his convictions still do not qualify as violent felonies because N.C. Gen. Stat. § 14-202.1(a)(2) does not require physical contact between the defendant and the victim, *see State v. Hammett*, 642 S.E.2d 454, 458 (N.C. Ct. App. 2007), and therefore does not categorically involve violent and aggressive behavior, *see Begay*, 553 U.S. at 143-44.

The parties' positions thus raise three questions: (1) whether the modified categorical approach should be used to classify Vann's indecent liberties convictions; (2) whether Vann's guilty pleas establish that he was convicted of the more violent of the two offenses set forth in N.C. Gen. Stat. § 14-202.1, as stated in subsection (a)(2); and (3) whether "[w]illfully commit[ting] or attempt[ing] to commit any lewd

or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years" qualifies as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii). I address each of these questions seriatim.

A

Beginning with *Taylor*, the Supreme Court has held that determining whether previous convictions qualify as "violent felonies" under ACCA "generally requires [a sentencing] court to look only to the fact of conviction and the statutory definition of the prior offense." *Taylor*, 495 U.S. at 602. This "categorical approach" essentially requires courts to consider only the *elements* of the offense of conviction and not the facts giving rise to the conviction. *See Chambers*, 555 U.S. at 125 ("[ACCA's] defining language, read naturally, uses 'felony' to refer to a crime as generally committed. And by so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing . . . whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior"). Thus, when confronting the question in *James* whether an attempted burglary conviction was a "violent felony," the Court "examine[d], not the unsuccessful burglary the defendant attempted on a particular occasion, but the generic crime of attempted burglary." *Chambers*, 555 U.S. at 125 (characterizing *James*, 550 U.S. at 204-06).

The Court has qualified this general principle, however, by adding that the categorical approach may be modified to "permit the sentencing court to go beyond the mere fact of conviction" in a narrow range of cases where the statute of conviction essentially contains multiple offenses. *See Taylor*, 495 U.S. at 602; *see also Nijhawan v. Holder*, 129 S. Ct. 2294, 2299 (2009). In these instances, the modified categorical approach helps courts "choose the right category," *Chambers*, 555 U.S. at 126, and therefore "*which* crime within a

statute the defendant committed," *United States v. Woods*, 576 F.3d 400, 405 (7th Cir. 2009).

Two recent ACCA cases decided by the Supreme Court, *Chambers* and *Johnson v. United States*, 130 S. Ct. 1265 (2010), demonstrate how the modified categorical approach works in practice. In each of those cases, the defendant was potentially subject to a sentence enhancement under ACCA, depending on how one of the defendant's previous convictions was classified. Identifying the proper classification required further analysis, however, because the statute underlying the previous conviction was, on its face, divisible into multiple offenses, in that it listed within a single section two or more groupings of elements, each of which (1) covered a conceptually distinct criminal act and (2) was sufficient to constitute a complete offense.

In *Chambers*, the defendant's prior conviction arose under an Illinois statute which provided:

> [Any felon who] intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony; however, [a felon] who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony.

Ill. Comp. Stat., ch. 720, § 5/31-6(a) (West Supp. 2008). Stressing that "[t]he nature of the behavior that likely underlies a statutory phrase matters," the *Chambers* Court applied the modified categorical approach because the statute contained "at least two separate crimes": "failure to report," on the one hand, and "escape from custody" on the other. *Chambers*, 555 U.S. at 126-27. To support this conclusion, the Court reasoned (1) that "failure to report" "seem[ed] less

likely to involve a risk of physical harm than the less passive, more aggressive behavior" associated with escape crimes, and (2) that the statute listed failure to report and escape separately in its title and body. *Id.* at 127.

Likewise, in *Johnson* the Court assessed a defendant's conviction under a Florida battery statute which proscribed

> 1. Actually and intentionally touch[ing] or str[iking] another person against the will of the other; or

> 2. Intentionally caus[ing] bodily harm to another person.

Fla. Stat. § 784.03(1)(a) (2003). Because the statute's elements were stated in the disjunctive and covered qualitatively different types of behavior, the Court concluded that it consisted of three separate offenses for ACCA purposes: (1) intentionally causing bodily harm; (2) intentionally striking a victim; or (3) actually and intentionally touching a victim. *See Johnson*, 130 S. Ct. at 1269. With this application of the modified categorical approach to the defendant's battery conviction, the Court provided the general rule for using the modified categorical approach when confronted with a statute having alternative elements: "When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes . . . the 'modified categorical approach' . . . permits a court to determine which statutory phrase was the basis for the conviction." *Id.* at 1273 (internal citation omitted).

In keeping with *Chambers* and *Johnson*, this court has applied the modified categorical approach when "different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes," *United States v. Rivers*, 595 F.3d 558, 562-63 (4th Cir. 2010), or when "the fact of conviction and the statutory definition of the offense are unduly vague or

ambiguous," *United States v. Harcum*, 587 F.3d 219, 223 (4th Cir. 2009).

Applied to the instant case, these precedents set up an initial, binary decision for the court to make: if the indecent liberties statute contains only one substantive offense, the categorical approach applies. But if it contains two or more substantive offenses, the modified categorical approach must be used instead.

The North Carolina indecent liberties statute at issue here is no different than the laws at issue in *Johnson* and *Chambers*, as it contains multiple, alternative elements, each of which addresses a different form of criminal behavior. As does the majority of this court, I conclude, as a matter of federal law, that the modified categorical approach is the proper device for evaluating Vann's prior convictions.

On its face, the indecent liberties statute provides that a defendant who is "16 years of age or more and at least five years older than the child in question" is guilty of "taking indecent liberties with children if . . . he *either*":

> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; *or*

> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C. Gen. Stat. § 14-202.1(a) (emphasis added). The indecent liberties statute is in this regard quite similar to the Florida battery law at issue in *Johnson*, as "the elements of [each] offense" are stated in the "disjunctive." *Johnson*, 130 S. Ct. at 1269. North Carolina courts have made this point repeatedly,

observing that a defendant's guilt may be "established by a finding of various *alternative elements*," *Hartness*, 391 S.E.2d at 180 (emphasis added); that "G.S. § 14-202.1 *states disjunctively two alternative means* of proving one element of the offense of indecent liberties," *Jones*, 616 S.E.2d at 20 (emphasis added and omitted); and that "the statute sets forth *two theories* upon which a conviction for indecent liberties may be based," *State v. Moss*, No. COA07-607, 2008 N.C. App. LEXIS 237, at *5 (N.C. Ct. App. Feb. 19, 2008) (emphasis added).[3]

The North Carolina indecent liberties statute, N.C. Gen. Stat. § 14-202.1, is also analogous to the escape provision addressed in *Chambers*, as both "place[ ] together in a single numbered statutory section several *different kinds of behavior*." *Chambers*, 555 U.S. at 126 (emphasis added). Just as "[t]he behavior that likely underlies a failure to report [is] less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody," *id.* at 127, the flashing, illicit photography, and other acts covered by subsection (a)(1) of the North Carolina statute present a lower risk of physical harm than instances in which a defendant "willfully commits or attempts to commit [a] lewd or lascivious act *upon or with the body*" of a child covered by subsection (a)(2) of the North Carolina statute (emphasis added). *Compare State v. Every*, 578 S.E.2d 642, 648 (N.C. Ct. App. 2003) (cataloging typical subsection (a)(1) offenses, some of which can be committed at a distance), *with State v. Wilson*, 361 S.E.2d 105, 106-07 (N.C. Ct. App. 1987) *and State v. Byrd*, 312 S.E.2d 528, 530 (N.C. Ct. App. 1984) (describing garden-variety subsection (a)(2) violations involv-

---

[3]Although we are normally bound by the North Carolina Supreme Court's construction of the elements of the underlying offense, *see Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010), where, as here, the North Carolina Supreme Court has not passed upon all of the relevant issues, we may consider and defer to North Carolina intermediate court decisions, *see Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998).

ing physical contact or sexual conduct occurring in close quarters).

Subsections (a)(1) and (a)(2) of the North Carolina statute also correspond to two different sections of the Model Penal Code, on which both the Supreme Court and our court have relied to differentiate between various "generic" crimes for ACCA purposes. *See Taylor*, 495 U.S. at 598 n.8; *United States v. Peterson*, 629 F.3d 432, 436 (4th Cir. 2011). Specifically, the offense defined in subsection (a)(2) is quite similar to what the Model Penal Code labels "sexual assault." Under the Model Penal Code, "A person who has sexual contact with another not his spouse, or causes such other to have sexual contact with him, is guilty of sexual assault . . . if . . . the other person is less than [16] years old and the actor is at least [four] years older than the other person." Model Penal Code § 213.4 (1962) (brackets in original). The Model Penal Code defines "sexual contact" as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." *Id.* Taken together, these elements closely approximate subsection (a)(2)'s coverage of "lewd or lascivious act[s] upon or with the body or any part or member of the body of any child of either sex under the age of 16 years." Both provisions have a gratification or lasciviousness component, both require a similar age differential, and both focus on physical contact of a sexual or intimate nature. *See State v. Strickland*, 335 S.E.2d 74, 75 (N.C. Ct. App. 1985) ("Section (a)(2) . . . concerns a lewd or lascivious act committed or attempted *on a child*" (emphasis added)).

The crime contained in subsection (a)(1), in contrast, is more closely aligned with the Model Penal Code's definition of "indecent exposure." A person is guilty of indecent exposure under the Model Penal Code "if, for the purpose of arousing or gratifying sexual desire of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm." Model Penal Code § 213.5 (1962). Subsec-

tion (a)(1) contains a nearly identical arousal or gratification element, and, while it proscribes a broader range of conduct, it also unquestionably applies to indecent exposure of the kind described in the Model Penal Code. *See, e.g.*, *State v. Lawrence*, 627 S.E.2d 609, 610 (N.C. 2006) (describing a "game" in which the defendant exposed himself to a child as a "specific incident[ ] of indecent liberties with a minor"); *Strickland*, 335 S.E.2d at 75 (holding that masturbating outdoors, 62 feet away from minor children, violated subsection (a)(1)). It does not, on the other hand, contain a "sexual contact" element akin to that found in the Model Penal Code's definition of "sexual assault." *See Strickland*, 335 S.E.2d at 75 (differentiating subsections (a)(1) and (a)(2) on this basis).

Because subsections (a)(1) and (a)(2) substantially correspond to two different Model Penal Code provisions, precedent dictates that they should be treated as presumptively different generic crimes mandating application of the modified categorical approach. *Cf. Peterson*, 629 F.3d at 436-37.

Vann offers a superficially appealing, albeit flawed, syllogism in response. He reasons that (1) federal courts are "bound by [state courts'] interpretation of state law, including [their] determination of [a statute's] elements," *Johnson*, 130 S. Ct. at 1269; (2) the North Carolina Supreme Court has stated that "*[t]he crime of indecent liberties is a single offense* which may be proved by evidence of the commission of any one of a number of acts," *Hartness*, 391 S.E.2d at 180 (emphasis added); therefore (3) we must treat the indecent liberties statute as a single offense and apply the categorical approach in our ACCA analysis.

This argument rests upon a mistaken understanding of the role state court decisions, such as *Hartness*, play in the ACCA analysis. We are bound by North Carolina's construction of § 14-202.1, including, for instance, its definition of various terms, its identification of the necessary elements of an offense, or its application of exceptions. This rule requires us,

for example, to adhere to state court decisions which interpret the phrase "with any child" in subsection (a)(1) to encompass both the physical and "constructive" presence of the child. *See State v. McClees*, 424 S.E.2d 687, 689 (N.C. Ct. App. 1993). At the same time, state court decisions cannot bind us on questions of *federal* law, such as whether a crime contains more than one offense and thus requires that we use the modified categorical approach in our ACCA analysis. Even if the North Carolina courts had answered this question—which they have not—we would not be bound by their conclusion.

In *Johnson*, the Supreme Court observed that it was "bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of" Florida's battery statute. 130 S. Ct. at 1269. The Court thus relied on the Florida Supreme Court's interpretation of the statute's "actually and intentionally touching" element as encompassing "any intentional physical contact, 'no matter how slight,'" in determining whether the defendant's prior battery conviction qualified as an ACCA predicate. *Id.* at 1269-70 (quoting *State v. Hearns*, 960 So. 2d 211, 218 (Fla. 2007)). At the same time, however, the *Johnson* Court *rejected* the defendant's argument that it was "bound by the Florida Supreme Court's conclusion in *Hearns* that [unwanted physical touching] does not constitute 'physical force'" for ACCA purposes. *Id.* at 1269. It explained:

> The meaning of "physical force" in § 924(e)(2)(B)(i) is a question of federal law, not state law. And in answering that question we are not bound by a state court's interpretation of a similar—or even identical —state statute.

*Id.*[4]

---

[4]Judge King's opinion, purporting to apply North Carolina law, states that the North Carolina courts have ruled that the indecent liberties statute constitutes a single offense and that therefore the use of the modified categorical approach is inappropriate. This conclusion, however, is flawed.

The Supreme Court's handling of state law in *Shepard* reinforces this point for the case before us. In *Shepard*, the Court analyzed a defendant's prior convictions arising under a Massachusetts statute which, in a single sentence, proscribed two different types of burglary: "generic" burglary of buildings and "non-generic" burglary of cars and boats. *See Shepard*, 544 U.S. at 17. The Court concluded that the modified categorical approach applied to the defendant's convictions, given the statute's alternative elements, *see id.* at 26, and did so

---

Once the *elements* of a state-law crime have been defined by state law, the question whether the statute contains two crimes so as to justify application of the modified categorical approach is a question of *federal*, not North Carolina, law. *See Johnson*, 130 S. Ct. at 1269-70; *Taylor*, 495 U.S. at 589.

Furthermore, the North Carolina courts do recognize that the two subsections of the indecent liberties statute provide alternative elements of one offense. *See Jones*, 616 S.E.2d at 20 (noting that the statute "states disjunctively two alternative means of proving one element of the offense" (emphasis omitted)); *Hartness*, 391 S.E.2d at 180 (noting the indecent liberties statute's "alternative elements"); *Strickland*, 335 S.E.2d at 75 (treating subsections (a)(1) and (a)(2) of the indecent liberties statute distinctively).

Indeed, Judge King cites *Jones* to support its statement that the crime of indecent liberties is a single offense, without recognizing that the same case also holds that the indecent liberties statute contains *alternative elements for violating that single offense*. *See Jones*, 616 S.E.2d at 20. In *Jones*, the defendant was charged with two counts of taking indecent liberties based on a single act of sexual intercourse with a child. *See id.* The State attempted to justify both charges by arguing that "[s]ubsections (a)(1) and (a)(2) are *separate criminal offenses* with different elements." *Id.* But the court logically rejected this argument, holding that "although the statute sets out alternative acts that might establish an element of the offense, a single act can support only one conviction." *Id.* Thus, *Jones* stands not for the proposition that subsections (a)(1) and (a)(2) constitute a single, undifferentiated offense, but rather that one incident may not support separate convictions under each subsection. Indeed, *Jones* explicitly undercuts Judge King's argument by its pronouncement that N.C. Gen. Stat. § 14-202.1 "states disjunctively two alternative means of proving one element of the offense of indecent liberties." *Id.*

*despite the fact that Massachusetts state courts treat burglary as a single offense*, *see Commonwealth v. Rudenko*, 907 N.E.2d 254, 257 (Mass. Ct. App. 2009) (referring to "*[t]he crime* of breaking and entering" (emphasis added)).

*Shepard*, *Johnson*, and the rest of the body of ACCA case law make clear that it is the *elements* of an offense, and not the *label* state law puts upon it, that determines whether the modified categorical approach applies. As the Court explained in *Taylor*, "Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary.'" 495 U.S. at 588-89. Whether or not a crime is subject to explication through the modified categorical approach thus turns on its "characteristics" rather than the way in which it is "labeled by state law." *Id.* at 589. Under this principle, the North Carolina Supreme Court's conclusion in *Hartness* that the indecent liberties statute contains "various alternative elements," 391 S.E.2d at 180, disposes of Vann's federalism argument.

Vann presses yet further, arguing that even if the statute contains two different elements, the North Carolina courts nonetheless treat each of them "interchangeably." This practice, Vann contends, means that the two elements collapse into one as a practical matter. Although decisions applying one subsection do occasionally rely upon precedents involving the other, *see State v. Kistle*, 297 S.E.2d 626 (N.C. Ct. App. 1982), or state that the two subsections overlap in some circumstances, *see Wilson*, 361 S.E.2d at 108, the North Carolina courts have nonetheless consistently differentiated between subsections (a)(1) and (a)(2), for instance by emphasizing differences in their respective elements, *see, e.g.*, *Strickland*, 335 S.E.2d at 75. Any lingering doubt that the textual differences between subsections (a)(1) and (a)(2) matter is surely put to rest by *State v. Moss*, a recent case in which the North Carolina Court of Appeals held that a trial court committed plain error by using a jury instruction based on

subsection (a)(2) when the defendant was charged under sub-section (a)(1). *See* No. COA07-607, 2008 N.C. App. LEXIS 237, at \*4-7 (N.C. Ct. App. Feb. 19, 2008).

At bottom, this case involves a routine application of the rule expressed in *Johnson*: "When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes . . . the 'modified cate-gorical approach' . . . permits a court to determine which stat-utory phrase was the basis for the conviction." 130 S. Ct. at 1273 (internal citation omitted). The North Carolina indecent liberties statute states disjunctively *two elements*, each of which relates to criminal behavior that is "different in-kind" from the other. *United States v. Bethea*, 603 F.3d 254, 258 n.3 (4th Cir. 2010).

The North Carolina indecent liberties statute therefore undoubtedly calls for application of the modified categorical approach under federal law, as a majority of this court holds today.

### B

On concluding that the modified categorical approach should underlie the ACCA analysis here, the next step is to determine which of the two possible offenses formed the basis of Vann's convictions. *See Chambers*, 555 U.S. at 126 (stat-ing that courts must use the modified categorical approach to "choose the right category"). And to do so, we consult a nar-row class of "conclusive records made or used in adjudicating guilt," which, when the defendant pleads guilty, includes "the terms of the charging document, the terms of a plea agree-ment or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, [and any] comparable judicial record[s]." *Shepard*, 544 U.S. at 21, 26.

Here, the district court relied on the presentence report's descriptions of Vann's three indecent liberties convictions,

referring to an indictment and "court records." As to the 1991 conviction, the report stated:

> *According to the indictment*, on December 17, 1991, Vann willfully did take and attempt to take immoral, improper, and indecent liberties with a child . . . for the purpose of arousing and gratifying sexual desire *and* did commit a lewd and lascivious act upon the body of said child.

J.A. 51 (emphasis added). The report indicated that Vann pleaded guilty to this charge. *Id.* Although the paragraphs of the presentence report describing Vann's two other indecent liberties convictions arising from conduct in July 1998 and August 1998, which were also obtained through guilty pleas, state that they were based on "court records," *id.* at 52, the descriptions of these offenses were materially identical to the description of the first, again tracking the statutory language, indicating that they too were based on the charging documents. Because the presentence report was derived from *Shepard*-approved sources and Vann did not object to its substance during the sentencing hearing, the district court was entitled to rely on it in classifying Vann's prior offenses as violent felonies. *See United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005).

Even so, accommodating our request, the parties provided us with the actual charging documents and judgment forms from Vann's prior convictions, which are now part of the record in this court and which confirm that the presentence report accurately described the charges to which Vann pleaded guilty. *See* ECF No. 46 (Feb. 22, 2010). Specifically, the December 1991 indictment alleged that Vann

> willfully and feloniously did take and attempt to take immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desire and did commit and attempt

to commit a lewd and lascivious act upon the body of the child named below. At the time of this offense, the child named below was under the age of 16 years and the defendant named above was over 16 years of age and at least five years older than the child. The name of the child is [SLH].

The July 1998 charging document (an information) included the somewhat more detailed statement—that Vann

willfully and feloniously did take and attempt to take immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desir[e] and did commit and attempt to commit a lewd and lascivious act upon [ENL], a child 13 years of age, the defendant being more than six years older than the child and was not lawfully married to the victim . . . .

The August 1998 charging document (also an information) included a statement similar to that included in the July 1998 charging document and named the same victim.

At oral argument, Vann's counsel asserted that "the court of appeals cannot consider an indictment that was not first produced to the district court." Oral Arg. at 9:13:11. Our precedent, however, does not support his claim. We have held that appellate courts "may properly take judicial notice" of state court proceedings that were not part of the district court record, particularly when such proceedings are "relevant and critical to the matter on appeal." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *see also Lolavar v. de Santibanes*, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking "judicial notice of the records of a court of record").

Thus, the *Shepard*-approved materials documenting Vann's previous convictions demonstrate that Vann "necessarily admitted" to violating *both subsections* of the indecent liber-

ties statute each time he pleaded guilty to the charges (in December 1991, July 1998, and August 1998). All three charging documents alleged that Vann "did take and attempt to take immoral, improper, and indecent liberties" with a child "for the purpose of arousing and gratifying sexual desire" *and* "did commit and attempt to commit a lewd and lascivious act upon the body" of the child. Further, in each case Vann pleaded guilty to the offenses charged without any reservation. Just as the charges against Vann covered violations of North Carolina General Statutes § 14-202.1(a)(1) *and* (a)(2), so too did his admissions, as embodied in his unqualified guilty pleas. *See Shepard*, 544 U.S. at 25 (plurality opinion) (noting that the nature of a prior conviction may be determined by "the defendant's own admissions").

In contrast to a jury verdict, which may rely on *either* alternative statutory element to support a finding of guilt, with the logical result that the verdict cannot "necessarily" be said to depend on either element in particular, *see United States v. Robinson*, 627 F.3d 941, 956 (4th Cir. 2010); *United States v. Gonzales*, 484 F.3d 712, 715 (5th Cir. 2007), in a pleaded case, it is the *defendant* who controls the basis for the conviction, *see*, *e.g.*, *United States v. White*, 408 F.3d 399, 402 (8th Cir. 2005) (holding that a defendant's guilty plea did not constitute an admission to facts the defendant expressly disavowed during his plea hearing); *Valansi v. Ashcroft*, 278 F.3d 203, 216 (3d Cir. 2002) (indicating that a defendant "may . . . plead guilty to only one of the allegations required to prove an element of her crime").

Because the defendant holds that control when pleading guilty, courts have routinely held that when a defendant does plead guilty without reservation, he necessarily admits *all* of the material facts alleged in the charging document. *See*, *e.g.*, *United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502, 515 (4th Cir. 2005); *White*, 408 F.3d at 402; *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996); *United States v. Kelsey*, 15 F.3d 152, 153 (10th Cir. 1994); *United*

*States v. Tolson*, 988 F.2d 1494, 1501 (7th Cir. 1993); *United States v. Parker*, 874 F.2d 174, 178 (3d Cir. 1989); *see also* 1A Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 172 (4th ed. 2008) (recognizing this position as the majority rule). *But see United States v. Cazares*, 121 F.3d 1241, 1246-48 (9th Cir. 1997) (concluding that a guilty plea admits only "the facts essential to the validity of the conviction").

This approach comports with the Supreme Court's observation in *United States v. Broce*, 488 U.S. 563 (1989), that "[b]y entering a plea of guilty, the accused is not simply stating that *he did the discrete acts described in the indictment*; he is admitting guilt of a substantive crime." *Id.* at 570 (emphasis added). It is also consistent with the way North Carolina courts have interpreted guilty pleas, *see State v. Thompson*, 336 S.E.2d 78, 81 (N.C. 1985) ("A valid guilty plea . . . serves as an admission of *all the facts alleged in the indictment* or other criminal process" (emphasis added)); *State v. Cobb*, 652 S.E.2d 699, 701 (N.C. Ct. App. 2007) (same), a point at least one other circuit has found significant when applying the modified categorical approach, *see United States v. Morales-Martinez*, 496 F.3d 356, 358-60 (5th Cir. 2007).

The Fifth Circuit's decision in *Still* well illustrates how this principle applies to situations such as the one presented here. In *Still*, the defendant "pleaded guilty to a conjunctive charge of 'using *and* carrying a firearm . . . during and in relation to the commission of a drug trafficking crime.'" *Still*, 102 F.3d at 124. This guilty plea, the court explained, operated differently than a jury verdict:

> A disjunctive statute may be pleaded conjunctively and proven disjunctively. In other words, despite having charged Still with "using *and* carrying" a firearm during and in relation to a drug trafficking crime, the government had only to prove that Still "used *or* carried" a firearm to convict Still of count

three. When Still pleaded guilty to count three, he admitted both to using *and* to carrying a firearm during and in relation to a drug trafficking crime.

*Id.* at 124-25 (final emphasis added).

Each of Vann's guilty pleas is precisely like the one at issue in *Still*, as Vann pleaded guilty to the compound charges against him without any reservation. As a result, his guilty pleas establish that he "necessarily admitted" to all of the allegations in the charging documents—*i.e.*, that he violated subsections (a)(1) *and* (a)(2) of the indecent liberties statute each time he was convicted. *See Shepard*, 544 U.S. at 26.

C

Because Vann pleaded guilty to both substantive offenses set forth in North Carolina's indecent liberties statute, he must be classified as an armed career criminal if either of those offenses qualifies as a "violent felony" under ACCA. *See* 18 U.S.C. § 924(e)(2)(B). Thus, in conducting the analysis, it makes sense to focus on the apparently more violent offense set forth in N.C. Gen. Stat. § 14-202.1(a)(2), involving the commission of a "lewd or lascivious act upon or with the body" of a child.

A previous conviction qualifies as a "violent felony" under the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii) so long as it is "punishable by imprisonment for a term exceeding one year" and "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Two recent Supreme Court decisions, *Sykes* and *James*, provide the relevant analysis for determining when a previous conviction "involves conduct that presents a serious potential risk of physical injury to another."

In *Sykes*, the Court held that a defendant's previous conviction for using a motor vehicle to "knowingly or intentionally

. . . flee[ ] from a law enforcement officer" fell within the residual clause and was thus a "violent felony." *Sykes*, 131 S. Ct. at 2270, 2277 (internal quotation marks omitted). Explaining the relevant analysis, the Court focused on the statutory language to determine whether a subject crime was, *in degree of risk*, sufficiently comparable to the offenses enumerated in § 924(e)(2)(B)(ii)—burglary, extortion, arson, and crimes involving the use of explosives. It stated that the subject crime "involves the requisite risk when" that crime involves a risk of injury "'comparable to that posed by its closest analog among the enumerated offenses.'" *Sykes*, 131 S. Ct. at 2273 (quoting *James*, 550 U.S. at 203). The analysis thus involves a "commonsense" comparison between the subject crime and the enumerated crimes in terms of risk. *Id.* at 2274. Using this approach, the Court concluded that vehicular flight was sufficiently similar in degree of risk to arson and burglary so as to make it a crime of violence under ACCA. It noted with respect to burglary, for instance, that the crime was "dangerous because it can end in confrontation leading to violence. The same is true of vehicle flight, but to an even greater degree." *Id.* at 2273. It explained:

> The attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase. The felon's conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide.

*Id.*

The *Sykes* Court also used a statistical analysis to confirm these "commonsense conclusion[s]." *Id.* at 2274-75. Specifically, the Court pointed to data indicating that vehicular flight results in "4 injuries to . . . nonsuspects per 100 pursuits," whereas burglary and arson account for only 3.2 and 3.3 injuries per 100 incidents, respectively—an increase in risk of

roughly 25%. *See id.*; *see also id.* at 2279-80 (Thomas, J., concurring in the judgment).

In *James*, the other key residual clause case, the Supreme Court held that a violation of Florida's attempted burglary statute was a "violent felony" under § 924(e)(2)(B)(ii). *See* 550 U.S. 192. The Court stressed that the residual clause does not "requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* at 208. Instead, a crime need only present the required degree of risk "in the ordinary case." *Id.* The Court illustrated this concept by noting:

> One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone—for example, a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors. But ACCA does not require metaphysical certainty. Rather, § 924(e)(2)(B)(ii)'s residual provision speaks in terms of a "potential risk." These are inherently probabilistic concepts. Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple "risk," much less a certainty.

*Id.* at 207-08. In essence, *James* directs courts to focus on the heartland of a particular crime when analyzing it for ACCA purposes—a point reaffirmed in *Sykes* by the Court's focus on the risk posed by "typical" instances of vehicular flight. *See Sykes*, 131 S. Ct. at 2273, 2275.

Like Vann, the defendant in *Sykes* argued that "*Begay* and *Chambers* require ACCA predicates to be *purposeful, violent, and aggressive* in ways that" his crime was not. *Sykes*, 131 S. Ct. at 2275 (emphasis added). The *Sykes* Court, however, expressly rejected this claim, explaining that Sykes had "over-

read[ ]" the Court's prior ACCA precedents, all but one of which focused on the *level of risk* as the determining factor. *See id.* ("In general, levels of risk divide crimes that qualify [as violent felonies] from those that do not"). The Court observed:

> The phrase "purposeful, violent, and aggressive" has no precise textual link to the residual clause, which requires that an ACCA predicate "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii). The *Begay* phrase is an addition to the statutory text. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same. *As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.*
>
> *Begay* involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict liability, negligence, or recklessness crime and because it is, for the reasons stated and *as a categorical matter, similar in risk to the listed crimes*, it is a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii).

131 S. Ct. at 2275-76 (emphasis added).

As the Court indicated, most crimes must now be analyzed according to the risk they present, rather than whether they are "purposeful, violent, and aggressive," as was the case under *Begay*. *Sykes*, 131 S. Ct. at 2275-76. Of course, the lan-

guage in *Begay* will likely continue to be relevant when applying the ACCA standard to offenses "akin to strict liability, negligence, and recklessness crimes." *Sykes*, 131 S. Ct. at 2276. *But see id.* at 2277 (Thomas, J., concurring in the judgment) ("The majority errs by implying that the 'purposeful, violent, and aggressive' test may still apply to [strict liability] offenses"); *id.* at 2285 (Scalia, J., dissenting) (disapproving of the majority's implication); *id.* at 2289 n.1 (Kagan, J., dissenting) (preferring to retain the "purposeful, violent, and aggressive" test when it is not redundant with the risk analysis). We need not resort to that analysis here, however, because "specific intent is an element of the offense of taking indecent liberties with children." *State v. Craven*, 324 S.E.2d 599, 584 (N.C. 1985).[5]

The question thus framed by *Sykes* and *James*' analysis is whether "[w]illfully commit[ting] or attempt[ing] to commit any lewd or lascivious act upon or with the body" of a child ordinarily involves a degree of risk comparable to that posed by any of the example crimes contained in § 924(e)(2)(B)(ii). I submit that it surely does.

---

[5]Judge King's opinion, continuing its misplaced application of the *Begay* standard to this case, *see*, *e.g.*, *ante*, at 18 ("[A]lthough *Sykes* may be said to distance the Court from its earlier emphasis on purposeful, violent, and aggressive conduct, the essential hallmarks of *Begay* were reaffirmed"); *ante*, at 18 ("Importantly, a violation of the [North Carolina] Statute does not require physical contact"), also recognizes that *Begay*'s analysis is limited to crimes of the kind before the Court in *Begay*, such as ones involving strict liability, *ante*, at 17. To justify application of the *Begay* standard, Judge King concludes that the North Carolina indecent liberties statute "resonates in strict liability, reminiscent of the *Begay* DUI offense." *Ante*, at 19. This conclusion, however, is clearly wrong. The North Carolina statute is a specific intent statute, not a strict liability statute. As the statutory text makes clear, indecent liberties offenses must be committed "[w]illfully" by the offender. N.C. Gen. Stat. § 14-202.1(a). Moreover, the North Carolina courts have amplified this point, stating that "specific intent is an element of the offense of taking indecent liberties with children." *State v. Craven*, 324 S.E.2d 599, 602 (N.C. 1985); *see also State v. Creech*, 495 S.E.2d 752, 756 (N.C. Ct. App. 1998) (same); *State v. Connell*, 493 S.E.2d 292, 294 (N.C. Ct. App. 1997) (same).

Typical violations of subsection (a)(2) present a potential risk of physical injury to the child that is at least as serious as the risk facing a victim of arson, burglary, or extortion. To begin with, subsection (a)(2) applies only when the perpetrator is "16 years of age or more and at least five years older than the child in question." N.C. Gen. Stat. § 14-202.1. That age differential gives rise to a power disparity between the adult perpetrator and the child victim which, like the threat element in extortion cases, naturally poses a risk that the perpetrator will employ coercive conduct that can readily escalate to physical violence. *Cf. Banks*, 370 S.E.2d at 407 ("We also bear in mind the enhanced power and control that adults, even strangers, may exercise over children who are outside the protection of home or school" (quoting *State v. Hicks*, 339 S.E. 2d 806, 809 (N.C. Ct. App. 1986))).

This risk is compounded by subsection (a)(2)'s second element, which requires the willful commission or attempted commission of a "lewd or lascivious act" by the perpetrator. N.C. Gen. Stat. § 14-202.1(a)(2). Inherent in any "lewd or lascivious act" is a drive for sexual satisfaction, frequently accompanied by an abdication of rational thought and self control. Such a loss of control injects unpredictability into the encounter and increases the odds that the perpetrator will resort to violent behavior to achieve his objective if met with resistance, just as a perpetrator of burglary or extortion might resort to violence to overcome resistance. *Cf. James*, 550 U.S. at 203-04.

Finally, subsection (a)(2) violations present a serious potential risk of injury because they must involve a sexual act committed "upon or with the body" of a minor child. N.C. Gen. Stat. § 14-202.1(a)(2). Perpetrators ordinarily satisfy this element by engaging in intimate physical contact with the child victim, such as fondling, French kissing, or sexual penetration. *See, e.g.*, *State v. Baker*, 426 S.E.2d 73, 75-76 (N.C. 1993); *State v. Banks*, 370 S.E.2d 398, 400 (N.C. 1988). Such contact often presents a potential risk of harm to children,

who may be unable to endure adult sexual contact without injury. *See United States v. Daye*, 571 F.3d 225, 231 (2d Cir. 2009); *cf.* David Finkelhor et al., U.S. Department of Justice, Office of Justice Programs, *Sexually Assaulted Children: National Estimates and Characteristics* 5 (2008), available at http://www.ncjrs.gov/pdffiles1/ojjdp/214383.pdf (stating that 17% of juvenile sexual assault[6] victims sustain injuries). A 17% injury rate for juvenile sexual assault victims is far greater than the 3.2% injury rate for burglary victims, as found in *Sykes*. While the study included conduct that may have a higher incidence of physical harm, like rape, it is surely indicative of the potential for physical harm in sexual assault crimes generally. Even when the perpetrator does not actually touch the victim, the "upon or with the body" requirement dictates that the offending conduct will take place in such close physical proximity to the victim that the adult has the ability to restrict the child's freedom of movement, thereby creating a serious risk that the child will be injured if he or she attempts to escape. *See Pierce*, 278 F.3d at 289. Either way, the potential for injury to the victim inherent in the encounter easily surpasses the "low baseline level [of] risk" associated with burglary. *See Sykes*, 131 S. Ct. at 2278 (Thomas, J., concurring in the judgment).

Other courts have come to the same conclusion when assessing similar statutes. In *Daye*, for example, the Second Circuit observed that "a sexual act inflicted upon a child by an adult ordinarily creates a serious potential risk of physical harm to the child" because "the nature of the conduct and the child's relative physical weakness give rise to a substantial likelihood that the adult may employ force to coerce the child's accession." 571 F.3d at 232. The court thus had "no doubt" that engaging in a sexual act with a minor, as pro-

---

[6]The study defined sexual assault to include actual or attempted rape or other sexual contact, including contact through clothes when the child is coerced to engage in such contact. *Id.* at 3, 11 n.1.

scribed by Vermont law, posed at least as much of a risk of injury as burglary:

> Both crimes may often involve, but do not necessarily require, the intentional use of force. Indeed, given the peculiar susceptibility of minors to coercion by adults into sexual acts, we think it more likely that violent and aggressive force will actually be employed in the course of committing the crime at issue here [sexual assault of a child] than in the course of committing an ordinary burglary. *See Tennessee v. Garner*, 471 U.S. 1, 21-22 (1985) (citing statistical evidence to the effect that "burglaries only rarely involve physical violence").

*Id.* at 234; *accord Pierce*, 278 F.3d at 290 ("[C]hild abuse . . . present[s] a serious *potential* risk of physical injury to the child, a danger that is quite similar in character to the *potential* injury to persons involved in arson or burglary").

A body of subsection (a)(2) case law reinforces these points. In *State v. Banks*, 370 S.E.2d 398 (N.C. 1988), for instance, the defendant, a 30 year-old man, "waited until all the other adults were in another part of the house" and then got into bed with a friend's twin eight year-old daughters. *Id.* at 407. At that point, the defendant

> kissed each of them, putting his tongue in their mouths, ears and noses. He touched and rubbed their genitals, inserting his finger several times into each twin's vaginal area. The victims asked defendant to stop but he persisted. They told him he was hurting them, asked him to leave and cried. Defendant put his hand over their mouths when they tried to cry out. He threatened to slap them and to kill their mother if they told her what had happened.

*Id.* at 400. Likewise, in *State v. Askew*, No. COA06-507, 2007 N.C. App. LEXIS 863 (N.C. Ct. App. May 1, 2007), the

defendant was convicted of six separate violations of subsection (a)(2), all of which involved physical contact between the defendant and the victim. *See id.* at *3-5, 10. These convictions included instances in which the defendant "pok[ed] [his daughter's] private part," "thr[ew] [her] on the ground," and molested her after commanding her to "get out of the shower." *Id.* at *4-5. The defendant's sexual advances were also accompanied by physical abuse and threats, as the defendant "hit" his daughter, "threw her down a flight of stairs," and told her that she would be sent to "a bad foster home where they would kill [her]" if she told anyone about the abuse. *Id.* at *6.

Other subsection (a)(2) cases, while not always involving express threats or violence, nonetheless present a "potential risk" of injury, *see* 18 U.S.C. § 924(e)(2)(B)(ii), based on the location of the sexual encounter, the power relationship between the perpetrator and victim, and the physical nature of the perpetrator's conduct. *See, e.g.*, *State v. Wilson*, 361 S.E.2d 105, 106-07 (N.C. Ct. App. 1987) (adult defendant "insert[ed] a foreign object into [a] child's vagina" during an incident which occurred in their "shared residence").[7]

Taken together, these considerations lead to the conclusion, reached by a majority of this court, that the conduct proscribed by N.C. Gen. Stat. § 14-202.1(a)(2) is categorically "similar in risk"—if not greater in risk—"to the listed crimes," *Sykes*, 131 S. Ct. at 2276, and therefore that a conviction

---

[7]Indeed, it can be noted, that in *Pierce*, this court conducted an exhaustive statistical analysis of the physical danger presented to children by *all* violations of N.C. Gen. Stat. § 14-202.1, including both subsections (a)(1) and (a)(2), and found that based on a review of 150 reported convictions between 1980 and 2002, "in 98% of the cases, the crime [was] committed in situations where the victim [was] in such close proximity to the perpetrator that the victim was exposed to the serious risk of injury." *Pierce*, 278 F.3d at 289 & n.*. Surely, a 98% exposure to risk of injury passes muster under *Sykes* to show the risk in "typical" convictions. *See Sykes*, 131 S. Ct. at 2273, 2275.

under § 14-202.1(a)(2) qualifies as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii).

Vann raises two counter-arguments, which Judge King accepts. But neither is persuasive. First he asserts that one can violate § 14-202.1(a)(2) without making physical contact with the victim, and that subsection (a)(2) violations are therefore not categorically "violent and aggressive."[8] For support, he focuses on a single case, *State v. Hammett*, in which the North Carolina Court of Appeals rejected a defendant's argument that "to be convicted under G.S. § 14-202.1(a)(2), the accused must physically touch the victim." 642 S.E.2d at 459.

Vann's reliance on *Hammett* is problematic in several respects. To begin with, the *Sykes* decision strongly suggests that a crime need not be "violent" or "aggressive" to qualify as a violent felony under § 924(e)(2), so long as it poses the requisite degree of *risk*. *See Sykes*, 131 S. Ct. at 2275-76. Thus, it is absolutely immaterial that there was no actual violence or physical contact in *Hammett*, because under ACCA, it is the "potential risk" of violence—in the typical case—that counts. *See James*, 550 U.S. at 207-08 ("[T]he combination of the two terms ['potential' and 'risk'] suggests that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk,' much less a certainty").

Moreover, *Hammett* itself exemplifies the serious potential risk of physical harm that *is* typically present in subsection (a)(2) cases. There, the defendant was convicted of seven counts of indecent liberties, all of which occurred in a residence shared by the adult defendant and his daughter, who was between five and ten years old when the violations were

---

[8]Judge King also notes, repeatedly, the absence of physical contact or touching. *See*, *e.g.*, *ante* at 18, 20, 21-22, 26. But, as we explain, that observation is immaterial to the analysis because it is the *potential risk* of injury that is critical. *See* 18 U.S.C. § 924(e)(2)(B)(ii); *James*, 550 U.S. at 207-08.

committed. *See Hammett*, 625 S.E.2d at 169. One of these counts—the one on which Vann focuses all of his attention—involved an incident in which the defendant forced his young daughter to "watch a pornographic DVD with him" while he masturbated. *See* Bill of Particulars, *Hammett*, at \*3-4 (N.C. Ct. App. filed Feb. 2, 2004). The other six counts, however, all involved intimate, physical contact between the defendant and his daughter, such as instances in which the defendant forced his daughter to straddle him in bed and "bounce up and down upon him," simulating sexual intercourse, or in which the defendant touched his daughter's genitalia "while she lay naked on a bed." *Id.* at \*2-3. Thus even in *Hammett*, the case Vann highlights for its lack of risk and physicality, 85% of the indecent liberties charges involved sexual contact between an adult and a child, amply demonstrating the "potential risk" of physical injury to the child.

Furthermore, the one count involving no physical contact in *Hammett* is the exact kind of outlier scenario that the Supreme Court in *James* directed lower courts to discount. There, the Court stressed that the proper focus in residual clause cases is on the risk "typically" associated with an offense—that is, the risk present "*in the ordinary case*." 550 U.S. at 208 (emphasis added); *see United States v. Billups*, 536 F.3d 574, 580 (7th Cir. 2008) ("The 'serious potential risk' language of the residual clause . . . is indicative of probability, rather than inevitability; therefore, an offense need not pose a serious risk of harm in *every* conceivable factual manifestation in order to constitute a crime of violence"). Under *James*, it simply does not matter that one can commit burglary or arson without creating any appreciable risk of injury to others, for instance by breaking into "an unoccupied structure located far off the beaten path and away from any potential intervenors," 550 U.S. at 207, or that one can imagine subsection (a)(2) violations that might be fairly characterized as nonrisky. What matters is that when an adult perpetrator "[w]illfully commits or attempts to commit any lewd or lascivious act upon or with the body" of a minor child, the encounter *ordinarily* involves

a substantial risk to the child's safety, either through the sexual abuse itself, or through the perpetrator's actions in securing the child's accession to the act and subsequent silence about the matter. *Cf. Daye*, 571 F.3d at 232; *Banks*, 370 S.E.2d at 400.

Vann's second counter-argument relies heavily on our holding in *Thornton*. In that decision, we held that Virginia's carnal knowledge offense, which makes it a crime to "carnally know[ ], without the use of force, a child thirteen years of age or older but under fifteen years of age," Va. Code Ann. § 18.2-63, does not qualify as a violent felony under ACCA. *Thornton*, 554 F.3d at 444. Although Virginia's carnal knowledge offense overlaps to some extent with North Carolina's indecent liberties offense, important and material differences exist that distinguish that statute from the one at issue here. Most notably, the Virginia offense is, by its own terms, committed "without the use of force," while the North Carolina crime is not so limited. Indeed, as noted above, the North Carolina crime often involves coercive conduct that can readily escalate to physical violence. The North Carolina statute also requires that the defendant be at least 16 years old and at least 5 years older than the victim, heightening the power differential and risk to the child and reducing the likelihood for any semblance, however impossible to give, of "consent." The result of these differences is that a typical violation of subsection (a)(2) involves a greater risk of injury than an ordinary violation of the Virginia statute considered in *Thornton*, and therefore it qualifies as a violent felony under ACCA, even though Virginia's carnal knowledge offense does not.[9]

---

[9]Moreover, after *Sykes*, *Thornton* may no longer be good law. *Sykes* relied heavily on statistical evidence regarding risk, and statistical evidence might show that the risk of injury from conduct violating Virginia's statute is actually higher than the 3.2% risk associated with burglary. *See Sykes*, 131 S. Ct. at 2274-75; *cf.* David Finkelhor et al., U.S. Dept. of Justice, Office of Justice Programs, *Sexually Assaulted Children: National Estimates and Characteristics* 5 (2008), available at http://www.ncjrs.gov/pdffiles1/ojjdp/214383.pdf.

### III

Just as burglary, attempted burglary, arson, and extortion pose "a serious potential risk of physical injury" to others, a typical violation of N.C. Gen. Stat. § 14-202.1(a)(2), involving "a lewd or lascivious act upon or with the body" of any child, poses a similar risk to the victim. Indeed, based on a canvas of the statute's elements and North Carolina case law, it appears that the relevant risk under the North Carolina statute is even greater. For these reasons, I have little difficulty in concluding, as does the majority, that a typical violation of § 14-202.1(a)(2) would constitute a "violent felony" for purposes of ACCA.

In addition to the statutory need to apply ACCA to enhance Vann's sentence, the context of Vann's conduct confirms that need in this case. Congress designed ACCA to incapacitate individuals whose prior conduct "makes [it] more likely that [they], later possessing a gun, will use that gun deliberately to harm a victim." *Begay*, 553 U.S. at 145. Vann's criminal history is of precisely that nature. Vann has pleaded guilty to taking indecent liberties with a child on three separate occasions, two of which involved a victim who was only 13 years old. J.A. 50-56. This crime involves a substantial power differential between perpetrator and victim, and the perpetrator was necessarily in close physical proximity to the victim. Individuals who commit this type of crime are just the type of people ACCA means to dissuade from possessing a gun.

At bottom, Vann is legally and factually an armed career criminal who should be sentenced accordingly.

Judge Shedd has authorized me to indicate that he joins this opinion.